In the Matter of the Morgan R. R. and S. S. Co. Praying for Appointment of Commissioners.

No. 7759.

IN THE MATTER OF THE MORGAN R. R. AND S. S. CO. PRAYING FOR APPOINTMENT OF COMMISSIONERS.

| 32 | 371 |
|----|-----|
| 50 | 787 |
| 51 | 1341 |
| 32 | 371 |
| 107 | 470 |

Perfect ownership consists of the use, the enjoyment and the disposal of the thing—the *usus, fructus* and *abusus*.

Perfect ownership gives the unlimited right of disposal and enjoyment. Imperfect owner- ship gives this right only when it can be done without injuring the rights of others, that is, of those who may have real or other rights to exercise upon the same property.

The *usus, fructus* and *abusus* are the three elements of perfect ownership and constitute the *jura in re*. The right of a lessee is not a *real* right—a *jus in re*. It is a *jus ad rem*. The lease of real estate does not therefore operate a divestiture of any element of prop- erty, but it prevents or encumbers the exercise of the right of full ownership. The right of a lessee is substantive, and is independent of changes in the ownership of the thing. Hence the purchase or expropriation of the rights of the owner does not necessarily em- brace or operate upon the right of the lessee. That right, in order to be affected, must itself be the object of the purchase or expropriation.

The purchase or expropriation of the rights of the owner simply gives subrogation thereto— no more, no less—and are the measure of the rights of the purchaser or expropriator.

If the right of lessee is worth no more than he has agreed to pay *in futuro* for it, the expro- priator of that right would pay him nothing, as it is worth nothing. *But if the right of lease will bring a greater sum than it is to cost the lessee, the latter is entitled to be paid the amount of such excess, which amount cannot be charged upon the sum fixed for the rights of the owner, unless the owner has received the rent in advance, or unless the value of his right has been fixed by reference to the present actual value of the lease.

The true test of the value of the rights of the lessee is found in the excess which it will now sell for over the amount he has agreed to pay for it.

The improvements put by the lessee on the leased premises belong to him. The owner of the premises has the right of electing to take them or not. But the owner can not be com- pelled to take them.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers,. J.*

Leovy & Kruttschnitt, for the railroad, appellant:

First—The whole theory of the company's case is based upon the mathematical axiom that the parts cannot be greater than the whole; that the amount to be paid by the company is a fixed sum, is the value of the land, and does not vary whether the fee be a unit, or whether it be split up into a thousand estates; and the only variables are the amounts to be paid to the owners of the different interests in the land.

If we express our whole case in the form of an equation, we have:

Value of lease + Value of remainder = Value of fee.

In which equation the value of the fee is a fixed quantity, and the value of the lease and of the remainder are variables. Mills on Eminent Domain, § 68, 73.

Second—In the above calculations we have not touched upon the question of improvements, which are really included in the above figures, and which now demand our attention. Those improvements belong to the lessee. They are worth, according to the appraisers, $1200. What is to be their fate?

Upon the termination of the lease, the lessee has the right to remove the improvements, unless the landlord elects to retain them at their fair value. C. C. 2726. By the expropriation proceedings the lease is terminated, and we must now fix the right of the parties. The value of the improvements is fixed at $1200.

C. E. Schmidt, for Montagnet, appellant:

First—It would be strange, indeed, if the lessee could be thus turned adrift at the instance of a private corporation, dispossessing him of the benefits of a valuable contract to serve to its own purposes of gain in the prosecution of works deemed advantageous to the public, and if he were to be compelled to submit without redress to such an impairment of the obligation of his contract, and to such an unceremonious divestiture of vested rights.

If the law creating this operation gave it such a right, such law would evidently be unconstitutional. Constitution of 1868, article 110 ; Constitution of 1879, article 155.

As said by Mr. Mills in his treatise on the Law of Eminent Domain, ? 37, "the Legislature may not destroy or impair the rights secured to individuals by virtue of their contracts. Const. U. S. art. 1 ? 10. The rights of individuals in and to property contained in their contracts of transfer are protected by the Constitution, but this does not interfere with the power of the State to condemn the property thus affected on giving due compensation. The property and the contracts must yield to the demands of the sovereign. The contract is not thereby impaired, for full compensation is given. A State may not annul or modify a grant of land, or a lease, or a mortgage on it, but it may take the land for public use on making compensation." 10 Md. 87 ; 6 Mass. 251.

Second—Act 37, of 1877, being the charter of the Morgan Company, requires that all owners or persons interested in the real estate shall be notified of the proceedings in expropriation. Sec. 17, ? 5th, and sec. 19 of same act.

Third—The power, under the act of 1879 (modifying section 20 of the original act of 1877), given to this court, to make such order as it may deem proper on a review of the proceedings had, and evidence adduced in the cause, would seem to be ample to authorize it to render such judgement as it may deem just and equitable, and to

put an end to a controversy which the law contemplates should be brought to a speedy termination. 49 Mo. 557; 115 Mass. 15; Mills on Eminent Domain, § 65 ; 66 Penn. 425 ; 26 Penn. 238.

Fourth—The company purchased the reversion of the lessors, and then, in virtue of their grant of eminent domain, appropriated the lot to their own use. They thus extinguished the estate of the lessees, both their actual interest under the two-years term in the lease, and their possible interest under the covenant of renewal. They took all the lessees had in that land. Ought they not pay for all ? A renewal of the lease agreeably to the covenant was out of the question. Although the company had succeeded to the rights and powers of the landlords, yet they wanted the lot for a depot, and this was incompatible with a renewal of the lease for the purpose of the defendants. The direct injury to them, or in other words, the value of the thing taken away from them, was to be measured by the worth of the lot, at the stipulated rents, for the residue of the term of two years, and for the whole of the term of three years. No assessment of damages or compensation would have been just or adequate that did not embrace both these terms, for the true measure of the interest the lessees had in the land was the joint value of the two terms. 32 Wisconsin, 569 ; Mills, § 246 ; 26 Vermont, 345.

W. E. Murphy for appellees :

First—"The valuation made by the assessor for purposes of taxation is not admissible in evidence, the determination of value having been made for a different purpose." Brown vs. Providence Railroad, 5 Gray, 35. "Nor is the return made by the owner conclusive upon him." Virginia Railroad vs. Henry, 8 Nev. 165 ; Mills on Eminent Domain, § 172.

Second—We find no guide on this subject in our own jurisprudence ; the constitution of 1879 provides that "private property shall not be taken *nor damaged* for public purposes, without just and adequate compensation being first paid." Art. 156. And yet it is the damage they themselves have caused that they invoke for the purpose of reducing the value of property from $10,000 to $3000, or $3600.

Mills on Eminent Domain, § 168, says, "the owner is entitled not simply to such sum as the property would bring at forced sale or *under peculiar circumstances,* but to such sum as the property is worth in the market, that is, to persons generally, if those desiring to purchase were found who were willing to pay its just and full value. Ordinarily, sales of property similar to that proposed to be condemned are not admissible in evidence, for the reason that the jury

cannot determine what motives of necessity may have dictated the prices obtained." § 170.

Third—"In such a case the finding of the jury of freeholders ought to be conclusive, unless, perhaps, where the misbehavior of the jury may be inferred from the inadequacy or exorbitancy of the damages awarded." Carrollton Railroad Company vs. Avart, 11 La. 192; Mills on Eminent Domain, § 245, 246; 26 Vt. 345.

The opinion of the court was delivered by

SPENCER, J. This is a proceeding under the charter of said company and acts amendatory thereof, to expropriate a certain lot of ground in New Orleans for the use of said company.

The lot in question is owned by J. B. Trescazes and others. It is under lease to the firm of H. J. Montagnet for a term of three years, with privilege of renewal for three years more, at a rental of sixty dollars per month. The lessees keep thereon a coal-yard, and have constructed upon it certain buildings for their own use and convenience.

Commissioners were appointed, and after hearing the various parties in interest, made their report, awarding compensation as follows :

First—To the owners of the lot, its value.................. $8000 00
Second—To the owners of the lot, the right of accretion, which
    they value at........................................    500 00
Third—To the lessees, the value of their improvements......   1200 00
Fourth—To the lessees, the value of their lease............   4020 00

Total to be paid by company...........................$13,720 00

The report of the commissioners was opposed in the court a qua, which, on hearing, confirmed it as to the first and third items and rejected the second and fourth.

The company and the lessees appeal. The owners pray for the affirmance of the decree below.

We think the evidence abundantly establishes that the rights of the owners in and to said lot are worth $8000. We deem it unnecessary to recapitulate it. The company must therefore pay, for the rights held by these owners and thus expropriated, the sum of $8000.

Perfect ownership consists of the use, the enjoyment, and the disposal of the thing—the usus, fructus, and abusus.

The Code, article 490, says : "Ownership is perfect when it is perpetual, and when the thing which is the subject of it is unencumbered with any charges toward any other person than the owner." It is imperfect * * * "if the thing which is the subject of it being an immovable is charged with any real right toward a third person, as an usufruct, use, or service."

Perfect ownership gives the unlimited right of disposal and enjoyment. C. C. 491.

Imperfect ownership gives these rights only " when it can be done without injuring the rights of others, that is, of those who may have real or other rights to exercise upon the same property." C. C. 492.

The rights of use, enjoyment, and disposal are said to be the three elements of property in things. They constitute the jura in re. The right of a lessee is not a real right, i. e. a jus in re. In other words, the lessee does not hold one of the elements of property in the thing. His right is a jus ad rem, a right upon the thing. While therefore, technically, the lease of real estate does not operate a divestiture of any elements of property, it does by the express terms of article 492 C. C. prevent or encumber the exercise of the right of perfect ownership. That article says that not only real rights but " other rights," vested in third persons, limit the exercise of full ownership. The right of a lessee is substantive, and is independent of changes in the ownership of the thing. C. C. 2733. The purchase or expropriation of the rights of the owner does not therefore necessarily embrace or operate upon the right of the lessee. That right in order to be affected must be itself the object of purchase or expropriation. If the rights of the owner are alone the objects of the purchase or expropriation, the right of lease is unaffected and continues. The purchaser gets only the thing encumbered by the lease. That is all he can get, for that is all the owner has. In other words, the purchase or expropriation of the owner's rights gives simple subrogation thereto, no more, no less. This of course gives the right to take any sums, falling due, in futuro, for rents of the thing.

We find therefore that the rights of the owner, expropriated by the company, constitute the measure of its rights against the lessee. What are those rights? They are:

First—The full ownership of the thing encumbered by a lease.

Second—The monthly rents, at sixty dollars per month, during the term of the lease.

But the company has also demanded the expropriation of this right of the lessee—this encumbrance upon the full ownership. If that right is worth no more than the lessee has agreed to pay for it, then, as the price, or rent in futuro, is yet to be paid, and as the company, holding the owner's rights, is the payee thereof, the company would owe the lessee nothing. But if this right is worth more than the sum so agreed to be paid for it, the lessee is certainly entitled to be paid the amount of this excess. He must have the value of the right which is taken away from him.

But it is said that the company having paid the owners the value of the property in full ownership, the amount to be allowed the lessee

must be taken out of the sum awarded to the owners. This would be just in the case when the owners had received in advance the rents, and where the right of lease was worth no more than the sums paid for it. But where the value of the property has been fixed, as in this case, by reference to the rent stipulated, and not by reference to the actual present value of the lease, and where the company becomes subrogee of the owner of the stipulated rents, it would be exceedingly inequitable to charge the owner with this difference between the stipulated rent and actual value of the lease. Such a process might result in giving the owner absolutely nothing where he had granted a lease at a small price, and when from unforeseen and temporary causes the leasehold had acquired an extraordinary and unexpected value. In this case all the experts, the commissioners, and the court evidently fixed and predicated the value of the lot by reference to the rental stipulated in the contract of lease. If the price of the fee is to be charged with and diminished by the difference between the stipulated rents and the actual present value of the leasehold, then the price of the fee should have been calculated on a rental equal to such actual present value—a process which would have largely increased the amount to be paid the owners of the fee.

We understand that the $8000 awarded to the owners is compensation for what the company takes and acquires from them. We have seen that this consisted of, first, the ownership in fee, encumbered by a lease, and, second, the rent stipulated in that lease. What the owners have not cannot be taken from them. They are to be paid only for what was taken from them, and are to be charged only with what they have received. The right of the lessee did not belong to the owners of the fee. It was a substantive right vested in him, and its acquisition by the company is derived from and through him. He is to be paid its value, i. e. the excess of what it will bring over what he has agreed to pay for it, and that excess cannot, in this case, be justly charged upon the amount awarded the owners.

The only true test of this excess of the value of the lease over the stipulated rental or price thereof, is to ascertain what sum the right of lease, or leasehold, will bring over and above the rent stipulated to be paid. In the case before us the rental is sixty dollars per month. If the right of lease would sell for seventy-five dollars per month of its term, then the excess of its value over its price is fifteen dollars per month.

The right of expropriation being a legal one, its exercise does not give rise to any other than actual damages ; consequently, damages are not to be considered. The law fixes these actual damages where the whole of a thing or right is taken at the fair value of that thing or

In the Matter of the Morgan R. R. and S. S. Co. Praying for Appointment of Commissioners.

right. The fact that the owner or lessee might build a store, or a fac-- tory, or warehouse on the lot, and derive large profits from that business,. would not make those contemplated profits a proper element in fixing- its present value. So the fact that the lessees, by keeping a coal-yard. on the lot, and having free access to the wharf (which they have not, by- reason of the privileges accorded to this company by the city), might. realize large profits from that business, would not justify us in taking the amount of these prospective and problematical profits as the value of the lease.

The true question is, what advance could the lessees get for the lease over the price or rent they are to pay? In other words, if the lease was put on the market for sale, what sum in excess of sixty dol- lars per month could be obtained for it, the improvements put thereon by the present lessees being excluded from the calculation? These im- provements belong to the lessees, the lessor or owner having the right of electing to keep them at an estimation. The owner and not the lessee has this right of election, and he cannot be compelled to take them, it being by law a matter of option on his part. The commis-- sioners and the court erred, therefore, in charging unconditionally these improvements as part of the amount to be paid by the company. C. C.. 2726, 508.

We think the evidence shows that the right of lease is worth more- than sixty dollars per month. We are satisfied, however, that some of' the witnesses exaggerate it when they fix it as high as $120 per month. They make too many conditions to that estimate, some of which have already been rendered legally impossible by the action of the city in granting the use of the wharf to the company, and in removing the- Third District ferry-landing.

We think that the interests of all parties will be subserved by a. final determination of this controversy. The lessees formerly paid seventy-five dollars per month, but induced the owners, under the present lease, to reduce the rental to sixty dollars. We see nothing in: the present condition of affairs, as disclosed in the record, to justify the belief that the right of lease would sell at a greater price than seventy- five dollars per month, which would be fifteen dollars per month advance over the sum to be paid. We think, therefore, that an allowance to the lessees of fifteen dollars per month for the unexpired term of the lease- will do justice.

It is therefore ordered, adjudged, and decreed that the judgment- appealed from is amended as follows :

First. By fixing the amount to be paid the lessees for value of' their lease at fifteen dollars per month from the date of the company

taking possession to the expiration of the term for which said lease may continue.

Second. By fixing the value of the improvements put by lessees on the lot at twelve hundred dollars ; by *giving the company the right to elect whether it will take said improvements at that price*, said election to be made in writing within thirty days from the date this decree is filed in the court a qua ; said improvements to be removed by the lessee, if the company elect not to keep them ; that as thus amended said judgment is affirmed. The costs to be paid by the company.

Rehearing refused.