78 So.2d 493

**STATE of Louisiana Through Department of Highways,**

**v.**

**Louis N. FERRIS et al.**

No. 41646.

Feb. 14. 1955.

Ferris & Achee and J. Edwin Bailey, Jr., Shreveport, for defendants-appellants.

W. Crosby Pegues, Jr., D. Ross Banister, Philip K. Jones, Baton Rouge, Francis X. Vinet, New Orleans, Louis S. Quinn, Baton Rouge, for plaintiff-appellee.

McCALEB, Justice.

Proceeding under the provisions of R.S. 19:1 et seq., the State of Louisiana, through the Department of Highways, instituted this suit against Louis N. Ferris, owner, and W. Leo Wall, Jr., and Lee P. Elkins, lessees, to expropriate the full ownership of Lot "E" of the Bachelor Heights Subdivision of the City of Shreveport and improvements situated thereon, for the purpose of relocating State Highway 20 from Natchitoches to Shreveport, and more particularly that part described as the "Youree Drive Extension" into Spring Street and downtown Shreveport.

Although the petition contained no valuation of the property to be expropriated, Ferris, by way of reconvention, prayed in his answer that the court fix the value at $22,-500, while Elkins, the sublessee, who had acquired the lease from the other defendant,

Wall,[1] claimed a total of $5,450, which allegedly represented the increased value of his lease and the expenses incident to his removal from the premises.

After a trial on these issues,[2] there was judgment granting the expropriation as prayed for on payment to Ferris of the sum of $17,231.50 and $987.50 to Elkins, or a total amount of $18,219 for the property. Both defendants have appealed from the judgment.

The property involved herein is situated in a neighborhood which is approximately 12 blocks southeast of the central business district of Shreveport, being separated from that district by a viaduct about five blocks long. This section contains various types of rental property and is described by one witness as "strip commercial development". The property is in the 1600 block of Market Street and has a frontage of 51 feet by a depth of 60 feet. The improvements consist of a one-story commercial building with tar and gravel roof. This structure is about 25 years old and the witnesses calculate its economic life at 20 more years; it has a glass front with two doors divided equally down the middle by a sheet rock partition and the interior floor is of wood. There is an addition which has been constructed in the rear with an area of between 207 and 266 square feet (the evidence does not disclose the actual area with certainty) and a concrete apron in front of the building for the use of automobiles.

At the time of the institution of these proceedings, the premises were under lease to Elkins, who operated a laundry and dry cleaning plant thereon, for $175 per month. This lease, which was for a term of 10 years, was originally executed in 1946 and provided for a monthly rental of $150 for the first three years and $175 for the remaining seven years. It had approximately three years to run at the date of the trial and it provided, among other things, that the lessee make all repairs, additions and alterations necessary for the maintenance of the building and also that he assume responsibility for its condition and hold the lessor harmless from any liability in damages for injury caused by any vice or defect therein. In addition to the income attributable to this lease, it appears that Ferris was receiving an annual rental of $27.50 for two large signboards which were installed on the property for advertising purposes.

It will be seen from the foregoing that the property was mainly adaptable for commercial uses and such employment was no doubt the most profitable use to which it could be put. Hence, the only question for determination is its market value.

---

1. Wall had assigned his interest to Elkins and made no appearance in the suit.

2. By preliminary pleas, defendants Ferris and Elkins questioned the right of expropriation and asserted that the act under which the suit was brought is unconstitutional. These exceptions were overruled and passed out of the case after the judgment of expropriation became executory.

In this case, as in Housing Authority of New Orleans v. Brinkmann, 224 La. 262, 69 So.2d 37 and Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541, there is no evidence of sales of similar or comparable properties in the vicinity, which would be the best guide in determining the market value to which the owner is entitled under the law. City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36. Accordingly, other methods of proving value were, perforce, resorted to by the litigants.

The State, taking advantage of the service sponsored by the Shreveport Real Estate Board (see Caddo Parish School Board v. Willer, 227 La. 201, 78 So. 2d 833) applied to it for an appraisal of the property and an Appraisal Committee of that body, composed of J. Pollard Sealy, Chairman, B. F. O'Neal, Jr., and J. E. Brumfield, undertook that task. Each of these experts made an independent survey and valuation and arrived at figures ranging from $14,000 to $16,000. However, after consultation, they adjusted the small differences existing between them and agreed that the property had a sound value of $15,000. In reaching their conclusion, these realtors used at least two recognized methods of establishing value—appraisement of the land and improvements separately, giving due regard to depreciation of the building, and the use of profits, i. e., rental, as a basis of return on invested capital. By the first method, they fixed the value of the building at $9,900 and the land at $5,100. By use of the monthly rental of $175 as a criterion of value, they considered this income for capitalization purposes and arrived at an identical $15,000 estimate.

Ferris produced a number of witnesses, expert and lay, who expressed opinions as to the value of the property. Two realtors, one banker and three adjoining owners, gave appraisals ranging between $21,000 and $22,000 for the property as a whole; another realtor said it was worth $22,500 and still another fixed its value at $24,000.[3] In addition, separate estimates were given for the land and the building. The banker thought that the land alone was worth $150 per front foot; two adjoining owners fixed the value at $200 per front foot and still another estimated $300 per front foot; a builder appraised the value of the improvements at $13,844.52 and one of the defense realtors, N. B. Stoer, said that its worth for the remaining 20 years of its life was $5 or $6 per square foot.

3.  The judge refused to consider this $24,-000 estimate, being of the opinion that he was without right to do so, as it exceeded the amount of $22,500 claimed by Ferris in his answer. Counsel for Ferris contend on this appeal that this was error · on the part of the judge and we find the complaint to be well founded.

However, we are of the opinion that the mistake was inconsequential as the high estimate of $24,000, although sincere, does not appear to be warranted when due regard is given to the nature of the property, the remaining usefulness of its improvements and the amount of revenue it produces.

Confronted with the conflicting evidence, the judge fixed the value of the property as a whole at $18,219, arriving at this amount by the following process: $9,352.50 for the building, based on a value of $5 per square foot, as per testimony of defense witness, N. B. Stoer; $229 for the concrete apron in front of the property, as per estimate of the State's witnesses; $7,650 for the land, or $150 per front foot, the average of estimates given by the witnesses and $987.50 awarded to lessee, Elkins, representing an excess rental value of $25 per month for the property over the stipulated rental of the lease for its unexpired term.

On this appeal, Ferris makes numerous complaints as to the award of the judge. However, we find no occasion to notice all of them as the case, for the most part, involves only an issue of fact. After a review of the evidence, we are satisfied that the amount given below represents fair and just compensation for the property expropriated and though we may differ with the judge as to the method employed in calculating the market value, the result that we reach is approximately the same.

One of the chief complaints of Ferris is that the judge, in estimating the value of the building at $9,352.50, simply applied the sum of $5 per square foot to the 1870½ square feet of the main building and did not give any consideration to the relatively new but small annex in the rear.

This point is unquestionably well taken but, as we have above indicated, it provides no valid ground for changing the decree for, when we analyze the various valuations that have been placed on the property and the manner in which the appraisals were reached, we conclude that the testimony of the realtors, comprising the Committee of the Shreveport Real Estate Board, is more impressive and entitled to greater weight than the higher appraisals given by the witnesses for Ferris.

The $15,000 appraisal of the State witnesses, which was reached after careful investigation, study and consultation, was founded on realistic criteria employed for the purpose of arriving at sound economic value. In their first method of appraisal, i. e., separate valuation of the land and improvements, the estimate of $9,900 for the building, including the annex, is grounded on valid factors which should have been given consideration in establishing sound values. However, the appraisal of the land at $100 per front foot is, perhaps, a little too low and we agree with the judge that the overall average of $150 per front foot given by the witnesses provides just compensation. Thus, the addition of $50 per front foot, or $2,550, to the $9,900 valuation of the improvements brings the total to $17,550, a figure substantially in line with the total of $18,219 awarded herein.

As a practical result, the value fixed by the judge is equitable and gives effect to the evidence on both sides, as the award is approximately one-half of the total of the combined appraisal of $15,000 given by the

State witnesses and $21,500 given by the majority of the defense witnesses.

■ The lessee, Elkins, contends in his appeal that the award in his favor should be raised to the amount of $5,425, which is prayed for by him in his answer. Other than his claim for $50 per month, allegedly representing the increased market value of the occupancy of the premises over the rent of $175 payable under the lease for the remaining months of its existence, the other items demanded, consisting of expenses he will assertedly incur in vacating the premises, do not constitute consequential damages recoverable in expropriation proceedings. They are items which the lessee would be compelled to defray when he moved from the property at the end of the lease and, hence, do not directly result from the condemnation.

Insofar as concerns the claim for compensation resulting from the increased value of the occupancy, counsel for the State maintain that the lessee was not a necessary party to the proceeding and, in support of this argument, have cited the cases of Shreveport and R. R. Val. Ry. Co. v. Hinds, 50 La.Ann. 781, 24 So. 287 and City of Shreveport v. Kansas City S. & G. R. Co., 181 La. 458, 159 So. 715.

■ The point raised by counsel is purely academic in this instance for the reason that the State, having joined the lessee as a party defendant, is hardly in a position to complain—and this, aside from the fact that we could not make any change in the judgment to the detriment of either appellant, since the State has neither appealed nor answered the appeal taken herein.

■ At any rate, assuming that the lessee of the property is not an indispensable party in an expropriation proceeding, it seems certain that he is not an improper party and may recover such part of the expropriation price as is attributable to his lease, for the lease is a *jus ad rem* which encumbers the right of full ownership. See In re Morgan R. R. & S. S. Co., 32 La.Ann. 371.

■ In the cited case, the court laid down a sound guide for determining the rights of the lessee to compensation in expropriation proceedings. The syllabus declares:

"If the right of lessee is worth no more than he has agreed to pay in futuro for it, the expropriator of that right would pay him nothing, as it is worth nothing. But if the right of lease will bring a greater sum than it is to cost the lessee, the latter is entitled to be paid the amount of such excess, which amount cannot be charged upon the sum fixed for the rights of the owner unless the owner has received the rent in advance, or unless the value of his right has been fixed by reference to the present actual value of the lease." [4]

■ Applying this rule to the case at bar, it would appear that the judge's award of

4. See also Nichols on "Eminent Domain" Vol. 2, Sec. 5.23(1) pp. 38, 39; Vol. 4, Sec. 12.42(1) p. 163, Sec. 12.42(2) pp. 172, 173 and Sec. 12.42(3) pp. 175–177;

$987.50 or $25 per month for the unexpired term of the lease, is proper. Witnesses for the lessee testified that the rental value of the leased premises at the time of the trial was $225 per month, being $50 per month in excess of the rent payable under the lease, whereas the calculations of plaintiff's experts were based on a valuation of the occupancy at the monthly rate as stipulated. Accordingly, the court was justified in resolving that the present rental value was $25 above the monthly rent payable by lessee.

The judgment appealed from is affirmed.

**78 So.2d 497**

**M. L. HARVEY**

**v.**

**Noel THOMAS.**

No. 41367.

Feb. 14, 1955.

wherein this principle is recognized and discussed. There, it is stated that the lessor and lessee are entitled to share in the expropriation award according to

Leon A. Picou, Jr., St. Francisville, for appellant.

Woodrow W. Overton, Clinton, for appellee.

HAWTHORNE, Justice.

The appellant, M. L. Harvey, did not appear at the time set for argument of the appeal in this court and did not file a brief in support of his appeal. It is well settled that under these circumstances the appeal will be dismissed. Di Martino v. O'Brien, 225 La. 329, 72 So.2d 749, and authorities there cited.

It is ordered that the appeal be dismissed.

their respective interests and that the matter of the apportionment is of no concern to the condemnor, being a problem in which only the claimants are involved.