200 So.2d 398 (1967)
HEIRS of J. E. MERILH
v.
PAN AMERICAN FILMS et al.
No. 2607.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1967.
Rehearing Denied July 5, 1967.
*399 Philip Gensler, New Orleans, for plaintiffs-appellees.
Brierre & Stephenson, W. Monroe Stephenson, New Orleans, for defendants-appellants.
Before McBRIDE, SAMUEL and HALL, JJ.
HALL, Judge.
The Heirs of Merilh, lessors of the commercial premises 735-737 Poydras Street in the City of New Orleans brought suit on October 29, 1964 against their tenant, Pan American Films, a commercial partnership and its individual members, viz. F. J. Richard and John M. LeBlanc, seeking to recover the sum of $900.00 rental due on the premises for the months of July, August and September 1964 plus interest, attorney's fees and costs.
Defendants filed an answer and a reconventional demand. In their answer they admitted non-payment of the rental due for the months of July, August and September 1964 but averred that they were entitled to a set-off against such rental in the sum of $1,035.00 being the cost of repairs which they made to the roof. In their reconventional demand defendants averred that they were entitled to a cancellation of the lease as of October 1, 1963 for failure of plaintiffs to make necessary repairs to the roof, and for a return of rental paid in error by them thereafter totalling the sum of $2,700.00. In the alternative defendants alleged that plaintiffs on May 26, 1964 entered into an agreement to sell the property to the City of New Orleans; that such sale was in the nature of an expropriation, and that as a result thereof defendants are entitled to recover from plaintiffs a "lease advantage" in the sum of $1,460.00.
Following trial on the merits, judgment was rendered in plaintiffs' favor for rental in the sum of $900.00 plus interest and ten per cent attorney's fees, subject to a credit in defendants' favor of $463.00 for roof repairs. Defendants appealed. Plaintiffs answered the appeal praying that the judgment be amended by striking out the $463.00 credit in defendants' favor, and that as so amended the judgment be affirmed.
The basic facts are as follows: Plaintiffs, as lessors, and defendants, as lessees, entered into two written contracts of lease whereby defendants leased the property 735-37 Poydras Street for the following purposes: "Offices of motion picture producers as well as sales of motion picture and still photo equipment." The two leases *400 are identical in terms except for the amount of rental to be paid. The first lease commenced on October 1, 1955 and ended on September 30, 1960; the second lease commenced on October 1, 1960 and by its terms extended to September 30, 1965. The second lease provided for a rental of $300.00 per month represented by notes payable monthly in advance on the first day of each month and provided for 10% attorney's fees in the event any of the notes were placed in the hands of an attorney for collection. Defendants moved out of the property on October 1, 1963 but continued to pay the rental due through June 1964.
Sometime prior to the year 1962 the City of New Orleans adopted a proposal for the widening of Poydras Street and in the Capital Expenditures Budget for the year 1963 allocated funds for the acquisition of rights-of-way for such widening.
On June 22, 1964, plaintiffs, under the threat of expropriation, entered into an agreement to sell the leased premises to the City. The agreement of sale, and subsequent conveyance to the City, was specifically made subject to the second, or current lease, to defendants. The Act of Sale to the City was passed on September 30, 1964, and on October 12, 1964 the City notified defendants in writing that "Because of purchase, expropriation and by default the City is terminating your lease as of September 30, 1964."
We find it convenient first to consider and dispose of defendants' reconventional demand. They allege that they are entitled to a cancellation of the lease as of October 1, 1963 because due to leaks in the roof they were forced to abandon the premises. The record does not sustain this contention. While it is true defendants wrote to plaintiffs on June 25, 1963 and again on August 15, 1963 complaining of leaks in the roof and while it is true plaintiffs did not repair the roof until December, 1963, after defendants had moved from the premises, there is no proof that the building was unfit for the purpose for which it was leased and no proof whatever that defendants moved out on account of the condition of the roof. The reason why they moved is clearly shown by the testimony of Mr. Frank J. Richard, one of the partners in Pan American Films, and himself one of the defendants in suit. Mr. Richard testified that in the early part of 1963 defendants decided to go into the business of processing color motion pictures; that this necessitated a large outlay for a new machine which they ordered in February 1963; that the machine was delivered in 1963 and came unassembled; that it cost $10,000.00 just to assemble and install the machine; that defendants were aware that the City was condemning property for the Poydras Street widening, and feared they would lose their lease; that they were unwilling to install the new machine in the premises because it would cost double to install it and then have to remove it to another location. Mr. Richard testified frankly that had it not been for fear of losing their lease through condemnation they would have installed the machine in the leased premises and remained there.
There is some testimony to the effect that defendants wrote a letter to plaintiffs asking that the lease be cancelled. This letter is not in the record but the record contains a letter from plaintiffs' attorney addressed to defendants stating that his clients were willing to permit plaintiffs to sub-lease the premises but would nevertheless hold them responsible for payment of the rent. Defendants engaged a real estate agent in an unsuccessful effort to find a sub-lessee and continued to pay the rent through June 1964. On June 29, 1964 defendants' attorney addressed a letter to the Real Estate and Record Division of the City of New Orleans in which he stated that his clients had been informed of the pending purchase by the City of the leased premises; that his clients had already vacated the premises and obtained a new location, and that it had come to their attention *401 that the sale of the property "may be being held up because of this lease."The letter went on to say:
"This is to inform you that Pan American would be more than glad to terminate the lease as they are presently paying rent for property which they are not using.
"In fact, I would appreciate your negotiating the purchase of this property as soon as possible so that we may terminate this lease * * *"
We are of the opinion that under the facts as disclosed by the record defendants are not entitled to a cancellation of the lease as of October 1, 1963, and are not entitled to re-imbursement of the $2,700.00 rental paid by them since that date.
Defendants reconvened in the alternative for a "lease advantage" in the sum of $1,460.00. They liken the voluntary sale by plaintiffs to the City to a condemnation proceeding, and show that in condemnation proceedings if the market value of the unexpired term of a lease is greater than the amount of rental due for the unexpired term the lessee is entitled to be paid the excess as "lease advantage," (see State Through Dept. of Highways v. Levy, 242 La. 259, 136 So.2d 35; State v. Ferris, 227 La. 13, 78 So.2d 493) and cite Nicholls on "Eminent Domain" to the effect that lessor and lessee are entitled to share in the expropriation award according to their respective interests.
In the present case, although the sale was brought about through threat of condemnation, neither the property nor the lease was condemned by the City. Instead the sale was a voluntary one in which the City acquired the property subject to the lease. We fail to see by what right defendants can claim the alleged "lease advantage" from plaintiffs. There is no showing that the amount received by plaintiffs as the purchase price of the property was calculated upon or influenced in any manner by the market value of the unexpired term of the lease. In other words there is no showing that any amount for the "lease advantage" is reflected in the price received by plaintiffs. Plaintiffs received no part of it directly or indirectly. Why then should they be obligated to pay defendants any part of the amount received by them? (See In re Morgan R. and S. S. Co., 32 La.Ann. 371, at page 376). Plaintiffs did not cancel the lease; the City did; and whatever claim defendants might have for "lease advantage" should be directed against the City. While it is true plaintiffs' offer to sell contained a clause holding the City free from all claims, this clause does not in our opinion apply to such a claim in view of the special provision in the offer making the sale subject to the lease. Moreover the right to enforce this clause is personal to the City and defendants have no direct right to enforce it.
We are of the opinion that defendants' reconventional demands should be dismissed in toto.
We now come to consider the main demand of plaintiffs. Defendants admit that they have not paid the $900.00 rental due for the months of July, August and September 1964, and plaintiffs are entitled to judgment for this amount plus interest, attorney's fees and costs subject however to any credits to which defendants may be entitled by way of off-set.
Defendants adduced testimony to the effect that they made repairs to the roof (an obligation of the lessors) to the extent of approximately $942.30 during the years 1955 and 1956. It is noted that these repairs were made during the term of the first lease which expired September 30, 1960. Defendants promptly paid all of the rental due under the first lease without seeking to deduct therefrom any amount for such repairs and without making any claim therefor. The Trial Court, properly in our opinion, rejected defendants' claim *402 for deduction thereof out of the rental due under the second lease.
Under the provisions of LSA-C.C. Art. 2694 when a lessee makes repairs upon the refusal of the lessor to make them, lessee's remedy is to deduct the cost thereof from the rent due. Obviously this means the rent due or to become due during the term of the then current lease. In our opinion reimbursement for the cost of such repairs is not authorized to be had from any other source. (See Rumfola v. Civiletto, 10 La.App. 779, 123 So. 153, 154).
The Trial Judge found however that defendants did make necessary repairs to the roof during the term of the second lease in the amount of $463.00 which the owner failed to make after due notice was given, and granted defendants a set-off in that amount against the amount of rental due plaintiffs.
However the record clearly reveals that this $463.00 item was not due for repairs made by defendants to the roof but was expended by them in constructing a new ceiling over the first floor of the premises.
Under the terms of the lease plaintiffs-lessors were not obligated to make any repairs except to the roof and exterior walls. All other repairs were the responsibility of the tenants. As a matter of fact the expenditures made by defendants were not for repairs to the ceiling but for the construction of an entirely new ceiling of a different type which they referred to as a "drop ceiling". Under the terms of the lease the lessee was obligated not to make any additions or alterations to the premises without the written consent of the lessor, and all additions, alterations or improvements made by the lessee with or without the consent of the lessor became the property of the lessor, and the lessee expressly waived all right to compensation therefor.
We are of the opinion that the Trial Court erred in allowing defendants a credit for the $463.00 item.
For the foregoing reasons the judgment appealed from is amended by disallowing and deleting the $463.00 credit allowed defendants and as so amended and in all other respects the judgment is affirmed; costs of both Courts to be borne by defendants-appellants.
Amended and affirmed.