BOLIN, Judge.
This is an appeal from a judgment expropriating property for highway purposes in a business area of a municipality and fixing the amount due by plaintiff to the landowner and sublessee.
In conformance with R.S. 19:51 et seq., the State of Louisiana, through Department of Highways expropriated some 29,967 square feet of ground, with improvements, located at or near a busy intersection in Monroe. Named defendants were D & J Realty Company, Inc., owners; S & S Realty Company, Inc., lessee; and Albert Thibeaux, sublessee and operator of Frenchie’s Restaurant which was located on the property taken. Following an appraisal by its experts the Department of Highways deposited $95,324 in the registry of the court and took title to the property on October 13, 1965, subject to reservation of the owner’s mineral rights. There being no issue raised as to the taking defendants were permitted to withdraw the deposit.
In April, 1967, defendants Thibeaux, D & J Realty and S & S Realty filed answers to the petition. Thibeaux sought judgment for $16,655.91 allegedly due him as the “leasehold advantage” of his surface lease which had fifty and one-half months to run from the date of taking until the date of expiration. D & J asked the court to fix the value of the land and improvements at $114,903.10, exclusive of the lessee’s interest.
During trial on the merits numerous experts testified for plaintiff and defendants relative to the value of the land. The lower court averaged the experts’ appraisals of the land and awarded the owner of the fee $16,708 in addition to the. sum which had previously been deposited in the registry of the court. From this sum it was ordered that $15,100 be paid to Thibeaux as compensation for expropriation of his property rights, or “leasehold advantage”. In so doing it held the landowner liable for 49% of the leasehold advantage and designated this portion a “leasehold disadvantage”. Following the judgment plaintiff deposited the $16,708 excess, together with 5% interest from October 13, 1965, through November 6, 1967, in the registry of the court and such excess was withdrawn on joint motion of D & J and Thibeaux.
From this judgment the State, through the Department of Highways, appeals. D & J Realty Company answers the appeal asking for an increase in its award. S & S Realty neither appeals nor answers the appeal and is no longer a party to this suit. Thibeaux, sublessee, being satisfied with the judgment, neither appeals nor answers the appeal although his counsel has furnished this court with brief citing authorities supporting the award to Thibeaux and suggesting that he is entitled to recover from the State out of the total award over and above the fee value of the land and improvements.
The property taken was comprised of two lots encompassing 29,967 square feet, being approximately 46% of a larger tract covering an area of 65,470 square feet owned by D & J Realty Company. It is undisputed the highest and best use of the subject property is for commercial purposes. The entire tract was leased to S & S Realty Company on July 1, 1955, at a monthly rental of $550, said lease to run through December 31, 1969. This lease provided that any additional buildings or improvements constructed on the premises would revert to the lessor at expiration of the lease. In 1956 S & S subleased the restaurant site to Thibeaux in exchange for his contract to build and operate a restaurant thereon at his own expense. This sublease was coterminous with that granted to S & S by D & J and likewise contained reversionary provisions. S & S utilized the remaining portion fronting on U. S. *788 Highway #80 for a filling station. No claim is made for severance damage to this remainder.
Appellant and defendant stipulated the improvements consisting of the restaurant building, awnings, air conditioners, paved parking areas, etc. had a value at the time of the taking of $24,900. The $15,100 value placed on the “leasehold advantage” was elicited on cross examination of one of the plaintiff’s experts and this amount is uncontested hy the sublessee or the State.
The issues confronting us are identical with those considered on the trial in the lower court. They are:
(1) The value of the land, since the value of the buildings and improvements was stipulated, and,
(2) The source from which the value of Thibeaux’s leasehold interest should be paid, i. e., whether out of the amount of the award to D & J Realty Company or as an additional amount to be paid by plaintiff over and above the amount fixed as just compensation to the landowner.
We shall consider the issues in the order stated. Two qualified expert witnesses testified for the State, declaring they considered certain sales of commercial property in or near the vicinity of the subject property and each reached approximately the same figure of $2.35 per square foot. The State’s appraisers declared they arrived at the market value by adjusting upward the square foot value of similar sales of raw land in the vicinity and added thereto the stipulated value of improvements. For appraisal purposes both of these witnesses divided the larger parcel into two portions or sections and placed a higher square-foot value on the remaining portion fronting Highway #80 than on the expropriated part.
Defendants’ experts, on the other hand, using the market data approach and considering some of the same comparables used by the State, appraised the property as a whole, attributing a square-foot value of $3.00 to the entire parcel and thus arrived at a land value of $89,900 to which they added the agreed value of the improvements, making a total valuation of $114,800.
The trial judge reviewed the testimony of the experts, all of whom he recognized as competent and reliable, and concluded that an averaging of the appraisals would result in a fair and equitable award to the landowner. By this method he arrived at a figure of $2.65 per square foot for the raw land, which we consider a proper valuation. We have carefully scrutinized the record and conclude that, under the facts as found, the lower court was justified in taking one-half of the total of the combined appraisals as a method of arriving at market value. This method is sanctioned by our courts under the holding of State v. Ferris, 227 La. 13, 78 So.2d 493 (1955).
On the issue of the source of the payment for the leasehold interest the State and defendant have cited the same authorities differing only in their contentions relative to the proper application of these authorities to the facts in the case at bar.
In the landmark case of In re Morgan R. R. & S. S. Company, 32 La.Ann. 371 (1880), from which has developed the jurisprudence relating to leaseholds in expropriation cases, it was held:
“But the company has also demanded the expropriation of this right of the lessee — this encumbrance upon the full ownership. If that right is worth no more than the lessee has agreed to pay for it, then, as the price, or rent in futuro, is yet to be paid, and as the company, holding the owner’s rights, is the payee thereof, the company would owe the lessee nothing. But if this right is worth more than the sum so agreed to he paid for it, the lessee is certainly entitled to be paid the amount of this excess. He must have the value of the right which is taken away from him.
(Emphasis added.)
*789 “But it is said that the company having paid the owners the value of the property in full ownership, the amount to be allowed the lessee must be taken out of the sum awarded to the owners. This would be just in the case when the owners had received in advance the rents, and where the right of lease was worth no more than the sums paid for it. But where the value of the property has been fixed, as in this case, by reference to the rent stipulated, and not by reference to the actual present value of the lease, and where the company becomes subrogee of the owner of the stipulated rents, it would be exceedingly inequitable to charge the owner with this difference between the stipulated rent and actual value of the lease. Such a process might result in giving the owner absolutely nothing where he had granted a lease at a small price, and when from unforeseen and temporary causes the leasehold had acquired an extraordinary and unexpected value. In this case all the experts, the commissioners, and the court evidently fixed and predicated the value of the lot by reference to the rental stipulated in the contract of lease. If the price of the fee is to be charged with and diminished by the difference between the stipulated rents and actual present value of the leasehold, then the price of the fee should have been calculated on a rental equal to such actual present value — a process which would have largely increased the amount to be paid the owners of the fee.
(Emphasis added.)
“We understand that the $8000 awarded to the owners is compensation for what the company takes and acquires from them. We have seen that this consisted of, first, the ownership in fee, encumbered by a lease, and, second, the rent stipulated in that lease. What the owners have not cannot be taken from them. They are to be paid only for what was taken from them, and are to be charged only with what they have received. The right of the lessee did not belong to the owners of the fee. It was a substantive right vested in him, and its acquisition by the company is derived from and through him. He is to be paid its value, i. e., the excess of what it will bring over what he has agreed to pay for it, and that excess cannot, in this case, be justly charged upon the amount awarded the owners.
(Emphasis added.)
“The only true test of this excess of the value of' the lease over the stipulated rental or price thereof, is to ascertain what sum the right of lease, or leasehold, will bring over and above the rent stipulated to be paid.”
In State, Through Department of Highways v. Cockerham, 182 So.2d 786, La.App. 1 Cir. (1966), the court again applied the rules laid down in Morgan and held:
“Hence, in the expropriation of property encumbered with a lease, the rights of both the owner and the lessee must be reckoned with in acquiring perfect ownership. The owner, of course, must be paid the fair market value of the property taken; and the lessee must be paid the fair market value of any lease advantage he possesses. Two separate and distinct sets of rights are being acquired in the taking. * * * If there is a lease advantage, the expropriator must pay the value thereof to the lessee. This amount is not owed by the owner to the lessee unless the owner has received the rent in advance or the value of the owner’s property has been fixed in relation to the present actual value of the lease. If the value of the owner’s rights have been determined in reference to the contract rent, the expropriator owes the lessee for the value of-his rights taken; however, if the value of the owner’s rights have been fixed in reference to the economic rent, then the lessee’s rights will be compensated for from the proceeds paid to the owner. If there is no lease advan *790 tage, the expropriator owes the lessee nothing.” (See State v. Ferris, supra)
In a recent case decided by this court, State of Louisiana, Through Department of Highways v. Holmes et al., La.App. 2 Cir. (1968), 209 So.2d 780, the foregoing jurisprudence was reviewed and relied upon in affirming a judgment of the lower court making separate awards to the lessor, for the land and improvements, and to the lessee, for the value of his leasehold advantage.
Again reviewing the testimony of all the appraisers we conclude that although the State’s appraisers considered the economic value of the leasehold interest in affirming their estimates of the land value with improvements, nevertheless, the principal approach used was the market data approach based on sales of comparables and by adjusting the square-foot value of those sales, taking into account the superior location, time of sale, accessibility and size of the subject tract. Accordingly, the leasehold advantage must be considered as a property right over and above the award to the owners of the expropriated land.
For the reasons assigned the judgment of the lower court is amended and recast and:
It is now ordered, adjudged and decreed that there be judgment in favor of D & J Realty Company, Inc. and against the State of Louisiana, through the Department of Highways, in the sum of $104,312 as market value of the property expropriated, exclusive of leasehold rights; that there be judgment in favor of Albert Thibeaux against the State of Louisiana, through the Department of Highways, in the amount of $15,100 as value of the leasehold advantage; that there be judgment in favor of D & J Realty Company, Inc. and Albert Thibeaux against the State of Louisiana, through the Department of Highways, for interest at the rate of 5% per annum from October 13, 1965 until paid on the amount of $7,380, representing the excess of the total of this judgment over and above the $112,032 heretofore deposited in the registry of the court by plaintiff.
It is further ordered, adjudged and decreed that the expert witness fees are fixed as follows: E. A. Porter, Jr., $250 for preparation and $100 for court attendance; Gilbert Faulk, $250 for preparation and $100 for court attendance; and John Sherrouse, Jr., $50 for court attendance; that appellant pay all costs which it is legally obligated to pay, including the fees of the expert witnesses.