CULPEPPER, Judge.
The State of Louisiana, through the Department of Highways, filed this suit to expropriate a parcel of land, together with the buildings and improvements thereon, for the purpose of constructing approaches to the new Alexandria-Pineville bridge. Named as defendants were (1) the owners of the property, Mrs. May Smallwood Thornton, et al., hereinafter referred to as the Thornton Estate; (2) the lessee of the property, Andress-Abbott, Inc., in liquidation; and (3) the sublessee, Morock Ford, Inc.
At the time the order of expropriation, was signed on June 16, 1960, the plaintiff deposited in the Registry of the Court the sum of $103,000, which it intended to be divided approximately as follows:
Thornton Estate (owner) . $ 86,930.00
Andress-Abbott (lessee) . 14,366.00
Morock Ford, Inc. (sublessee) . 1,334.00
.pl02,630.00
(Rounded out to $103,000.00)
*218 After a trial on the merits, the district judge awarded the following, including the amounts deposited:
1) The Thornton Estate (owner) .. $158,707.00
2) Andress-Abbott, Inc. (lessee). 16,625.00
3) Morock Ford, Inc. (sublessee).;. 9,635.00
The State appealed. The Thornton Estate answered the appeal, seeking an increase in its award.
The substantial issues on appeal are: (1) the value of the land and buildings actually taken; (2) severance damages to the remaining property; and (3) whether the $26,260 awarded to the lessee and sub-lessee must be deducted from the award to the landowners.
I. VALUE OF THE LAND TAKEN
The facts show that before the taking the Thornton Estate owned approximately three-fourths of a city block, used for an automobile dealership, in the City of Alexandria. The buildings are about 18 years old. The parcel taken, about one-half of the block, fronts 120 feet on Third Street, runs back along Fulton Street a depth of 213.32 feet and has an additional frontage of 120 feet on Second Street. On this parcel is located a single story brick building containing display windows, offices, a repair shop, parts department, etc. The remainder of the property after the taking, about one-fourth of the block, fronts 93.86 feet on Third Street, by a depth along Winn Street of 106.66 feet. Improvements located on this parcel consist of a paint and body shop used in connection with the automobile dealership.
As to the value of the land and improvements, the defendants introduced the testimony of three expert witnesses, Mr. James C. Bolton, chairman of the Board of the Rapides Bank & Trust Company, Mr. Frank O. Hunter, director of the same bank, and Mr. Donald L. Chambers, a local realtor. These witnesses used primarily the cost less depreciation approach and gave the following appraisals:
Mr. James C. Bolton:
Value of the land taken. $ 52,625.00
Cost of the building taken, $160,000, less a depreciation of $10,000, giving a depreciated value of. 150,000.00
Total $202,625.00
Mr. Frank O. Hunter:
Value of land taken. $ 60,000.00
Replacement cost of the building, $160,000, less 20% depreciation . 128,000.00
Total $188,000.00
Mr. Donald L. Chambers: Value of land taken. $ 56,700.00
Cost of building, $174,882.05, less a depreciation of 25%. 131,116.55
Total $187,816.55
Plaintiff introduced the testimony of three expert witnesses as to the value of the land and improvements taken, Mr. E. A. Thorpe, Jr., a professional appraiser of *219 New Orleans, Mr. M. C. Gehr, a realtor and appraiser of Alexandria, and Mr. Leroy Cobb, a realtor and appraiser of Baton Rouge. These witnesses used both the cost and income approaches. They gave substantially the following appraisals:
Mr. Thorpe:
This expert, using both the cost and the income approaches, estimated the value of the entire property, both the parcel taken and that remaining, before and after the taking, and appraised the land and buildings taken at $102,600. He used a 61.85% depreciation on the building taken.
Mr. M. C. Gehr:
The land taken . $ 33,600.00
Cost of the buildings, $128,856, less a depreciation of 50% .... 64,428.00
Total $ 97,028.00
Mr. Leroy Cobb:
Value of the land. $ 42,810.00
Cost of the buildings, $130,572, less a depreciation of 50%- 72,412,00
Total $115,222.00
Near the conclusion of the trial it was stipulated by the parties that the replacement cost of the building does not exceed $130,572 (this being the figure reached by Mr. Cobb). However, the percentage of depreciation is seriously disputed by the landowners.
In a detailed and well considered opinion the trial judge discussed the testimony of the above witnesses and awarded the following for the land taken and the improvements thereon:
1) Value of land taken (120 feet by 213.32 feet). $ 51,196.00
2) Replacement value of building, $130,000, less a depreciation of 25% . 97,500,00
Total $148,696.00
The State does not seriously dispute the trial court’s award for the land and improvements taken. However, the Thornton Estate contends that the value of the land taken should be $56,441.66, which is the average of their three appraisers, Messrs. Bolton, Hunter and Chambers. After carefully considering the evidence, we find the record justifies the award by the trial court. Certainly, in view of the large discretion of the trial judge in these matters, there is no manifest error.
The Thornton Estate also contends that the building taken should be depreciated only 15%, instead of 25%. As is shown above, the Thornton Estate’s own witness, Mr. Chambers, used a 25% depreciation figure. Its witness, Mr. Hunter, used a 20% figure. The State’s witnesses generally used a depreciation figure of about 50%. We think the 25% depreciation used by the trial judge is fully supported by the record.
*220 II. SEVERANCE DAMAGES TO THE REMAINING LAND AND IMPROVEMENTS
The remaining parcel of land measures 93.86 feet front on Third Street by a depth along Winn Street of 106.66 feet. Located on this parcel is the paint and body shop, formerly used in connection with the automobile agency. At the time of the trial, the property was being rented as a used car lot for $60 per month. Before the taking, this parcel was appraised at $20,022. Severance damages of approximately 50% were awarded, i. e., the sum of $10,011. The evidence shows that after the taking this remaining parcel will be substantially reduced in value because of its size. The building has little usefulness apart from the automobile agency. The elevated approaches to the new bridge will reduce its value for any business purpose. Clearly, this award for severance damages is justified.
III. SHOULD THE COMPENSATION DUE THE LESSEE AND SUBLESSEE BE DEDUCTED FROM THE AWARD TO THE LANDOWNERS
At the time of the expropriation on June 16, 1960, the property was leased to Andress-Abbott, Inc. for a term expiring on May 31, 1964, 47^ months after the taking, at a rental of $550 per month. Andress-Abbott, Inc. had subleased the identical property to Morock Ford, Inc. for a term also expiring on May 31, 1964, at a rental of $900 per month. However, Morock acknowledges that it remained on the premises, as the State’s lessee, until December 31, 1960, and hence is entitled to a lease advantage for only 41 months.
Under these facts, it is clear that An-dress-Abbott, Inc. had a lease advantage of $350 per month for a period of 47j^ months. There is little, if any, dispute that it is entitled to an award of $16,625.
As to the lease advantage of the sublessee, Morock, the State’s own witnesses, Cobb and Thorpe, testified the property has a present rental value of about $1,000 per month. Mr. Bolton and Mr. Hunter placed the present rental value at about $1500 per month and Mr. Chambers at $1268.33 per month. The trial judge carefully considered this evidence and concluded that the present rental value is $1135 per month. This gives Morock a lease advantage of $235 per month for a period of 41 months which produces the sum of $9,635. The evidence fully supports this award.[1]
The State contends that the total of $26,260 awarded to the lessee and the sub-lessee must be deducted from the award to the landowner for the land and improvements taken. The rationale of this position is the general rule that the total awards for separate interests in expropriated property cannot exceed the total market value of the property as a whole. This position is supported by the recent case of State v. Holmes, 253 La. 1099, 221 So.2d 811 (1969), in which our Supreme Court held under similar circumstances, with three justices dissenting, that the award to the lessee must be deducted from the value of the land and improvements as a whole. The Holmes decision became final after the district court’s decision in the present case.
In the Holmes case, the State expropriated a certain parcel of land, together with the buildings thereon, used for a cocktail lounge. Using the cost less depreciation approach, the trial and appellate courts awarded a total of $37,442.76 to the owners for the property taken and severance damages. In addition, a separate *221 judgment awarded the lessee $12,000 as a lease advantage. The court of appeal held that where the award to the landowner is calculated on any basis other than the income approach, an award for a lease advantage is not deducted from the award to the landowner for the property taken. In the Holmes case, our Supreme Court expressly rejected this position and held as follows:
“The Court of Appeal in resolving fhe issue, while relying on the pronouncements of this court in the case of In re Morgan R. R. & S. S. Co., 32 La.Ann. 371, and State v. Ferris, 227 La. 13, 78 So.2d 493, and that of the First Circuit Court of Appeal in the case of State, Through Department of Highways v. Cockerham, La.App., 182 So. 2d 786, we think erroneously applied them to the facts of this case.
“The general rule universally obtaining is ‘ * * * where there are several interests or estates in a parcel of real estate taken by eminent domain, a proper method of fixing the value of, or damages to, each interest or estate, is to determine the value of, or damage to, the property as a whole, and then to apportion the same among several owners according to their respective interest or estates rather than to take each interest or estate as a unit and fix the value thereto, or damage thereto separately, although there are holdings otherwise or exceptions. * * * ’ 27 Am.Jur.2d, Eminent Domain, Sec. 247.
“This court, in its landmark decision In re Morgan, supra, established the rule that has been universally followed by the courts of this state in determining the rights of parties involved in expropriation proceedings where the real estate is encumbered with a lease, as is succinctly expressed in the syllabus:
“ ‘If the right of lessee is worth no more than he has agreed to pay in futuro for it, the expropriator of that right would pay him nothing, as it is worth nothing. But if the right of lease will bring a greater sum than it is to cost the lessee, the latter is entitled to be paid the amount of such excess, which amount cannot be charged upon the sum fixed for the rights of the owner, unless the owner has received the rent in advance or unless the value of his right has been fixed by reference to the present actual value of the lease.’ ”

“It is apparent that under the rule laid down in the Morgan case that ‘where the value of the property has been fixed * * by reference of the rent stipulated, and not by reference to the actual present value of the lease * * * it would be inequitable to charge the owner with the difference between the stipulated rent and the actual value of the lease, ’ applies only when the appraisal of the property taken was made without consideration of the economic value of the lease when using the income approach. Hence, the case at bar is readily distinguishable. As pointed out above all the appraisers in their evaluation fixed the entire and full value of the property at the time of the taking and the damage thereto using two recognized and approved methods, arriving at approximately the same amount under both approaches. While in one of the recognized methods there was appraisal of the improvements using the reproduction cost less depreciation, in the other method, they also appraised the land and damage to the remainder, but in appraising the improvements they used the economic income approach. It, therefore, follows in fixing the value of the property in full ownership using the actual value of the lease or the cost of reproduction less depreciation, they being substantially the same, the lessee must be paid from that amount.”
In the present matter, the landowners contend the Holmes case is distinguishable on the facts. They say that in Holmes both the cost less depreciation and the income approaches were used to determine the value of the land and improvements taken. Whereas, in the present matter, only the cost less depreciation approach was used. Actually, there is some dispute as to wheth *222 er in the present case only the cost less depreciation approach was used. Several of the expert witnesses also based their evaluations on the income approach. The trial judge concluded that the attempted appraisals by the income approach were so vague and speculative that this approach could not be used. Hence, the trial judge used only the cost less depreciation approach.
In our view, it is immaterial whether the cost less depreciation approach or the income approach is used. In either event, an application of the holding in the Holmes case to the facts of this matter requires that the awards to the holders of the lease interests be deducted from the award to the landowners for the value of the land and improvements taken.
In their brief filed in this court, the landowners contend: “* * * the jurisprudence of this state is clear that the award to a tenant cannot be deducted from the amount' due the owner unless the owner has received his rent in advance, or unless the value of the property has been fixed by using the present value of the lease as distinguished from the actual amount of rent being paid to the owner. ”
This contention is made under the language of the syllabus in the Morgan case, quoted in full above, that the amount due the lessee “ ‘cannot be charged upon the sum fixed for the rights of the owner, unless the owner has received the rent in advance or unless the value of his right has been fixed by reference to the present actual value of the lease. ’ (Emphasis added.) ” From this language the landowners contend that if the land and improvements taken are appraised by the cost' less depreciation approach, this being a method other than the income approach, the award to the lessee cannot be deducted from the award to the owners. This was the same view taken by the Court of Appeal, and expressly rejected by our Supreme Court in Holmes.
The confusion probably arose from the fact that the syllabus in the Morgan case was not written by the court and was not sufficiently comprehensive to express the holding of the court. In the Morgan case, the land taken was leased for a coal-yard at a rental of $60 per month for a term of 3 years. The court found that at the time of the expropriation, the property had a rental value of $75 per month. Hence, there was a lease advantage of $15 per month. The value of the land and improvements was fixed only by reference to the monthly rental of $60 provided in the lease. The present rental value of $75 per month was not used. Of course, this would have resulted in a higher value of the property. Hence, it was obvious that the award for the lease advantage should not be deducted from the award to the landowner. This rationale is made clear in the following portion of the court’s opinion:
“But where the value of the property has been fixed, as in this case, by reference to the rent stipulated, and not by reference to the actual present value of the lease, and where the company becomes subrogee of the owner of the stipulated rents, it would be exceedingly inequitable to charge the owner with this difference between the stipulated rent and actual value of the lease. Such a process might result in giving the owner absolutely nothing where he had granted a lease at a small price, and when from unforeseen and temporary causes the leasehold had acquired an extraordinary and unexpected value. In this case all the experts, the commissioners, and the court evidently fixed and predicated the value of the lot by reference to the rental stipulated in the contract of lease. If the price of the fee is to be charged with and diminished by the difference between the stipulated rents and the actual present value of the leasehold, then the price of the fee should have been calculated on a rental equal to such actual present value — a process which would *223 have largely increased the amount to be paid the owners of the fee.”
Unfortunately, the syllabus in the Morgan case was not prepared by the court. From the language used in the syllabus, quoted above, it is possible to argue the general rule is that the award to the lessee is not deducted from the award to the owner unless the value of the property is fixed by reference to the present rental value. Actually, there is no such holding in the decision of the court in the Morgan case. Our Supreme Court has recognized this in the Holmes case. In Holmes, the Supreme Court clearly stated the general rule is that the award to the lessee must be deducted from the value of the property as a whole. If the court had considered that the Morgan case expressed a contrary general rule, it necessarily would have expressly overruled the Morgan case. However, the court in Holmes did not overrule Morgan, but instead cited it with approval and quoted at length therefrom.[2]
Of course, it can be argued that State v. Ferris, 227 La. 13, 78 So.2d 493 (1955) supports the landowner’s position. In Ferris the cost less depreciation approach was used to find a value of $17,231.50 for the property taken, which amount was awarded the owner. In addition, an award of $987.50 was made to the lessee for his lease advantage. However, the question of deducting the lease advantage from the market value of the property was not raised nor discussed. In his dissent in the Holmes case, Justice Sanders expressed the opinion the court should have confronted the Ferris case. However, the majority chose to do no more than say that Ferris had no application. Regardless of these considerations, the holding of the majority in the Holmes case is clear and is controlling in the present matter.
For the reasons assigned, the judgment appealed is amended to deduct the sum of $26,260, awarded to the lessee and sub-lessee, from the value as a whole of the land and improvements taken, thus reducing the award to the Thornton Estate to the sum of $132,447. (The total award to the Thornton Estate for the land and improvements taken, plus severance damages, was originally $158,707) Otherwise than as herein amended, the judgment appealed is affirmed. One half of the costs of this appeal are assessed against the Thornton Estate.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.

. These awards to the lessee and the sub-lessee are supported by the following authorities ; In re Morgan R. R. & S. S. Co., 32 La.Ann. 371 (1880); State v. Perris, 227 La. 13, 78 So.2d 493, 495 (1955); State, Through Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961); State, Through Department of Highways v. Sumrall, 167 So.2d 503 (La.App.1964); State, Through Department of Highways v. Cockerham, 182 So.2d 786 (La.App.1965).

. For a more detailed discussion of the general rule that the total of the awards for the various separate interests in the land should not exceed the total value of the land and improvements, see Orgel on Valuation under Eminent Domain, Vol. 1, Secs. 107-113; and particularly Secs. 120-127 with reference to apportionment of the total award between the lessor and the lessee.