PRICE, Judge.
On August 15, 1961, the State of Louisiana, through the Department of Highways, filed this action to expropriate 32.825 acres of land from the defendants in connection with the construction of Interstate Highway No. 20 through Ouachita Parish, Louisiana. This parcel of land was part of a total tract of 52.525 acres owned by defendants in the corporate limits of West Monroe, Louisiana. Prior to the taking by the State the entire tract was bounded on the south by Natchitoches Street, on the west and north by Stella Street, and on the east by North Main Street. Eight acres of the tract were used for a drive-in theater which was leased *760 to a Mr. H. G. Prophit, Jr., also made a party defendant in this suit. The expropriation took 4.6 acres of the area being used by the theater. The remainder of the 52.525 acre tract was undeveloped land.
The Department of Highways deposited the sum of $174,367.00 in the registry of the court as just compensation, itemized as follows:
Value of land expropriated $116,027.00
Value of improvements being used as drive-in theater which were expropriated 58,000.00
Value of fence not included in drive-in theater 340.00
In answer to the suit the defendants contested the amount deposited as adequate compensation and claimed severance damages to the remainder of the property. After trial on the merits of the case in November, 1967, the district court rendered judgment in favor of defendants awarding them $577,208.00 as the market value of the 32.825 acres taken, and severance damages of $129,400.00 to the remaining property, subject to a credit of $174,367.00 previously deposited in the registry of the Court. From this judgment the Department of Highways has appealed.
Appellant has raised four serious issues by its appeal:
(1). That the evidence does not establish that there was any immediate intent to develop the property for the use as a shopping center nor does it reflect that there was a reasonable probability that it could be developed as such in the foreseeable future.
(2). The propriety of accepting opinion testimony on the highest and best use of land from witnesses not possessing the training and qualifications of a licensed real estate appraiser.
(3). The reliance by the district court on the opinion of witnesses as to the fair market value of land that resulted from a market data analysis using as comparables sales of tracts of a much smaller size than that being appraised.
(4). The acceptance by the district court of the cost reproduction method of arriving at the value of improvements without allowing any depreciation.
The three real estate appraisers who testified for plaintiff were of the opinion that the best and highest use of the property prior to the expropriation was for a combination of commercial, residential and industrial use. They considered the frontage along Natchitoches Street for a depth of between 150 to 400 feet as being most suitable for commercial purposes. In their opinion a strip of approximately eight acres on Stella Street would have been most suitable for residential use, and the area in between the commercial and residential was best suited for light industrial purposes. The maximum estimate of these witnesses for the value of the commercial property was $10,000.00 per acre. The value of the industrial property was estimated between $2,000.00 and $2,500.00. The estimates of residential property value along Stella Street were given on a front foot basis of $22.50 to $25.00 per front foot. None of the plaintiff’s witnesses were of the opinion that the remainder of 19.7 acres left after the expropriation suffered any damages by reason of the taking.
All of these witnesses agreed that the area being used for a drive-in theater was being put to the highest and best use. The improvements pertaining to the theater were appraised by plaintiff’s witness, Mr. Chester Driggers, on a replacement cost basis at $94,991.00 and depreciated by 33.3% for a net depreciated value of $63,359.00.
Defendants called a total of eleven witnesses. Robert B. Sims of Ruston, Lawrence L. May of Shreveport, and Donald Thames of Monroe, all possessed the qualifications of a real estate appraiser. Wil *761 liam R. Boles, Edward Murray Hudson, Saul A. Mintz and Jack L. Smith were identified as persons with considerable experience in development of commercial properties in the Cities of Monroe and West Monroe. It was also shown that several of these individuals held offices with various financial institutions and made real estate appraisals on behalf of these institutions as well as for their personal business ventures.
All of defendants’ witnesses were of the opinion that the highest and best use of the entire 52.525 acre tract, exclusive of the eight acres occupied by the drive-in theater, was for the development of a regional shopping center. Among the factors on which their opinions were based was the size of the tract under a single ownership, its location in regard to residential subdivisions and traffic thoroughfares, suitable terrain without detrimental characteristics for development, and its freedom from zoning restrictions. Several of these witnesses testified that this was the only tract of this size to their knowledge under a common ownership in the corporate limits of either Monroe or West Monroe. Two of these witnesses stated that they had considered this property for development of a shopping center but were advised by the owners that the property was not for sale.
The only witnesses of defendants who testified as to the fair market value of the property were the three real estate appraisers, Mr. May, Mr. Sims and Mr. Thames. The other witnesses only testified as to the highest and best use of the property.
These witnesses used the market data approach and generally used the same com-parables. These were sales of smaller tracts comprising between five and nine acres which had been purchased in the development of neighborhood shopping centers in West Monroe, and other cities. Based on these comparables, the opinions as to the per acre market value of the 52.525 acre tract ranged from $12,500.00 to $15,000.00.
Defendants’ appraisers also concluded that the remaining 19.7 acres were damaged as a result of being severed from the larger tract. They opined that it was no longer of sufficient size or accessibility for use as a shopping center and that its best and highest use after its severance was for light industrial purposes. Their estimate of value for this purpose was $8,000.00 per acre.
The courts of this State have held on many occasions that a person does not have to be a professional real estate appraiser to be qualified to give expert testimony on the value or use of land. State, Through the Department of Highways v. Lumpkin, 147 So.2d 80 (La.App.2nd Cir., 1962); State, Through the Department of Highways v. Madden, 139 So.2d 21 (La.App.2nd Cir., 1962). In the case of State, through the Department of Highways v. Huson, 166 So.2d 3 (La.App.2nd Cir., 1964), this Court held:
“The courts of this state have repeatedly held the trial court is vested with much discretion in determining whether a witness is qualified to testify as an expert.”
We feel that the trial judge was correct in accepting the testimony of Mr. Hudson, Mr. Boles, Mr. Mintz and Mr. Smith as experts on the question of highest and best use of the property involved, and that he gave it proper weight. These men have had extensive experience in property management, commercial development and real estate financing. Most of their experience was gained in the immediate area of the property in question. It is apparent from reading the testimony in which defendants sought to qualify these witnesses, that they are men of unquestionable character, integrity and ability.
In contrast to the witnesses for plaintiff, some of defendants’ witnesses had actual experience in the purchase of land for development of commercial shopping centers. Although the centers previously developed in the twin cities were of a much smaller *762 acreage than that involved herein, defendants’ witnesses explained the difficulties encountered by not having a sufficient sized tract for future expansion. A most logical reason for favoring a larger tract, as pointed out by Mr. Boles, was the desire of a prudent investor to be able to protect the success of his initial investment by adding to the center as the demand increased rather than permitting adjacent land owners to derive the benefit. Defendants’ witnesses all conceded that a tract of this size could not be developed all at one time but it would take several years to utilize the entire area.
The Supreme Court of Louisiana in the case of Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491 (1950), discussed the issues of the owner’s intent and the time element involved in development of property as follows:
“In determining the market value of property expropriated, it must be conceded that it is not merely the value for the use for which it has been applied by the owner that should be taken into consideration. The possibility for its use for all available purposes for which it is adapted and to which it might in reason be applied should be considered. The ultimate test of value in that respect is what men of wisdom and prudence and having adequate means would devote the property if owned by them. On the other hand, possible uses which are so remote and speculative and which would require the concurrence of so many extrinsic conditions and happenings as to have no perceptible effect upon present market value should be excluded from consideration.”
The question of the highest and best use of the property is a purely factual issue, and we find that there is ample evidence in the record to substantiate the district judge’s finding on this issue.
The opinion evidence on the per acre value of the land in this area for shopping center purposes was based on a market data analysis using sales of other properties developed for shopping center purposes as comparables. The evidence reflects that these alleged comparable sales involved much smaller tracts than the one under consideration. It was also necessary to buy from more than one owner in some of the transactions. It is well recognized that a large tract will not sell for the same per unit price as will a small tract. Also it is only logical that it is more expensive to assemble a suitable plot by acquisitions from several different owners than from one owner. Although the Court has no quarrel with the methods used by the experts of defendants in appraising the fair market value of the property for use as a shopping center, we feel that the sales used as comparables in the market data analysis were not entirely comparable to the property under study. An allowance should have been made for the adverse factors affecting subject property that render it somewhat less valuable than the sales relied on.
The defendants’ expert appraisers, Mr. May, Mr. Thames and Mr. Sims, varied in their estimate of value from $12,500.00 to $15,000.00 per acre. Mr. Boles, defendants’ witness, testified that he and his associates purchased a 40 acre tract on the south side of Monroe subsequent to this expropriation to be developed for a shopping center. Although he could not remember the exact consideration paid, he did recall that it did not exceed $10,000.00 per acre.
We are of the opinion that the per acre value of $10,000.00 would be a fair and equitable price for the 52.525 acre tract, inclusive of the portion used for a drive-in theater prior to the expropriation in 1961.
The appellant does not complain of the use of the cost reproduction approach in arriving at the value of the improvements on the portion of the tract used for the drive-in theater, but contends that there is no evidence in the record to justify a conclusion that no depreciation has occurred. The only evidence on this issue on *763 behalf of defendants is the testimony of Mr. Harry G. Prophit, Jr., the lessee, and a Mr. Harry Thomas, an official of a theater chain which operated the drive-in. They each testified that the ticket and concession buildings were in good repair and that the screen was constructed of steel and painted regularly to prevent rust. Appellant’s witness, Mr. Driggers, appraised the drive-in theater improvements by the cost of reproduction approach at $94,991.00. He then applied a depreciation factor of 33.3% based on his opinion that, although this type of facility suffers very little physical depreciation, it is affected by economic factors which require a reduction in the capitalized value of the improvements. In his opinion, as the land value on which the drive-in is situated increases to a point where the return from its use as a drive-in theater is not commensurate with its market value, then economic depreciation has occurred.
We are of the opinion that some measure of depreciation must be applied in this case. As we do not find from the evidence that any appreciable amount of physical depreciation has occurred, we feel that a depreciation factor of 20 per cent would be proper and the value of the improvements should be fixed at Seventy-five Thousand, Nine Hundred Ninety-two and 8%oo ($75,992.80) Dollars.
We find that the district judge was correct in his holding that the 19.7 acres remaining after the expropriation had suffered damages by reason of their severance from ‘the larger tract.
The evidence reflects that the remaining tract consists of a long narrow strip of land along Natchitoches Street. Although the witnesses are in conflict as to whether it would have any commercial usage, it is apparent to the Court that the depth is too shallow to allow a very desirable commercial use. It is also shown that the traffic count along Natchitoches Street has been substantially reduced by the construction of 1-20. The district court’s award of severance damage must be modified to conform to the before taking value as found by this Court.
From the evidence we find the 19.7 acres remaining to have a value of $8,000.00 per acre after the taking. The before taking value having been fixed at $10,000.00 per acre, it has thus suffered a severance damage of $2,000.00 per acre, or Thirty-nine Thousand, Four Hundred and No/100 ($39,400.00) Dollars.
To recapitulate, it is our finding that the just compensation due the defendants in this case is as follows:
1. Value of land expropriated $328,250.00
2. Value of improvements used as drive-in theater 75,992.80
3. Value of fencing not included in the theater area 340.00
Total value of land and improvements $404,582.80
4. Severance damage to remaining land 39,400.00
Total amount of just compensation $443,982.80
For the foregoing reasons the judgment appealed from is amended to reduce the amount awarded for the fair market value of the property expropriated from $577,-208.00 to $404,582.80, and to reduce the amount awarded as damages to the remainder of defendant’s property from the amount of $129,400.00 to $39,400.00.
*764 As the defendants received the amount fixed in the judgment of the district court as of August IS, 1967, they should be, and are liable for interest at the legal rate upon the difference between said sum and the amount of this judgment from the date noted until paid.
In all other respects the judgment of the district court appealed from is affirmed.
The costs of this appeal only are assessed against the appellees.