PONDER, Justice.
 

 The plaintiff, Daniel A. Rials, brought suit against the defendant, L. I. Davis, seeking to cancel a certain lease and to recover damages for the breach of its terms. While the cause was pending in the lower court, the lease terminated under its terms. Upon trial the lower court gave judgment awarding the plaintiff damages in the amount of $3,000 with legal interest from judicial demand until paid. The defendant has appealed. The plaintiff has answered the appeal and asks for the award of damages to be increased to $10,000.
 

 The plaintiff entered into a written contract leasing his cleaning business, known as the Barrel Dry Cleaners, together with the machinery, equipment and furnishings used to carry on the business, to the defendant for a period of 52 weeks for a consideration of $5,200 to be paid at the rate of $100 per week. All the public utility bills incurred in the operation of the business were to be paid by the lessee. The lessor was not to engage in any business competitive with that carried on under the lease during its term. The lessee was granted an option to purchase the business, exclusive of the realty and improvements thereon, for a consideration of $20,000 plus the amount of any licenses, taxes, and insurance previously paid by the lessor. The lessee was granted an alternative option to renew the lease at its expiration for a like period on the same terms and conditions set forth in the lease. In event the lessee did not exercise the option to purchase the business, the cost of licenses, taxes and insurance previously paid was to be borne by the lessor. Certain supplies owned by the lessor were to be used by the lessee, who was to pay the cost of same to the lessor with the understanding that if the option to purchase were exercised by the lessee the amount paid for the supplies was to be credited on the purchase price. All necessary repairs to maintain the property in usable condition were to be borne by the lessee and the lessee agreed and bound himself to return the leased property to the lessor at the termination of the lease in like good condition in which he received it, subject to reasonable wear and tear incident to a prudent use of it. It was agreed that any increase in licenses,
 
 *84
 
 taxes or insurance premiums was to be borne by the lessee and that all taxes due on the business to agencies of the government were also to be borne by the lessee.
 

 The defendant was the proprietor of a competitive cleaning business, known as Milady Cleaners, at the time the lease was executed. The evidence shows that when the business was turned over to the lessee it was a going concern engaged in the cleaning business with around 20 employees and receiving an average of $195 weekly. The receipts for the first four weeks following the transfer averaged $195 weekly. The lessee continued the business as a going concern until October 1, 1945, after which time the cleaning work was transferred to the defendant’s establishment, Milady Cleaners. The personnel was reduced until only one woman was left on duty at the leased premises to take care of the customers and receive clothes, which then were cleaned at Milady Cleaners and returned to the Barrel Cleaners, the leased business, for delivery to the customers. At the time the suit was brought and when the business was returned to the lessor, the receipts had decreased to an amount less than $40 per week.
 

 The purpose ' of this suit is to recover damages occasioned the leased business by the failure of the lessee to maintain the business as a prudent administrator. The defendant in his answer alleged that the transfer of the business was made on account of defective wiring, but this is not borne out by the testimony.
 

 The defendant contends that the lower court erred in holding that there was an implied obligation to continue the leased business as a going concern at the location of the business.
 

 From our investigation we do not find that this Court has ever passed on the question raised herein. Common-law authorities cannot aid us in a solution of the problem for the reason that the common law regards a lease for years as the grant of an estate, and not a mere transfer of the use and enjoyment of thing leased. Under the civil law, a lease for years is regarded as a mere transfer of the use and enjoyment of the property. Art. 2674, Rev. Civil Code; Viterbo v. Friedlander, 120 U.S. 707, 7 S.Ct. 962, 30 L.Ed. 776; 35 C.J., Verbo Landlord and Tenant, Sec. 382, p. 1141.
 

 Article 2710 of the Revised Civil Code provides:
 

 “The lessee is bound:
 

 “1. To enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease.
 

 “2. To pay the rent at the terms agreed on.”
 

 This article of our code contains the same provisions contained in Article 1728-of the Code Napoleon. In discussing Article 1728 of the Code Napoleon and the duties of the lessee, the French commentators make the following comments:
 

 “The lessee may not transfer elsewhere the industry or the commerce which he
 
 *85
 
 carried on in the immovable rented, if that industry or commerce was being carried on previously to the lease; for the lessee would profit thus from the clientele which was attached to the leased premises and would appropriate to himself that clientele, of which only the enjoyment was given him. For the greater reason may he not if the lease, explicitly or by implication, imposed upon him the obligation of maintaining business. Baudry-Lacantinerie et Wahl, Traite theorique et pratique de droit civil, Du contrat de louage (2e Ed. 1900), t. I, n° 757, p. 396.
 

 “The obligation to use the thing for the destination for which it is intended is independent of the damage which may result. The damage concerns the abuse of the enjoyment; one may abuse the enjoyment even while, at the time, conserving to the thing the destination indicated by the lease.” Laurent, Principes de droit civil francais (4e Ed. 1887), t. 25, n° 259, p. 280.
 

 “In saying that the lessee should enjoy the thing as a good father of family, the law impliedly obliges him to occupy the leased premises. He may not leave them, even though he continue to pay his rent; the non-use of the thing may be prejudicial to the owner; and from the moment the lessee causes damage in not filling his obligations, he is responsible. He is so, notably, when the thing concerned is a commercial establishment, such as a hotel. * * *” Laurent, op. cit. supra, n° 252, p. 270.
 

 “When the immovable is rented for an industrial or commercial use, is the lessee obligated to maintain 'that object and to effectively pursue the commerce or industry in a manner so that the clientele will remain intact?
 

 “One admits the affirmative. Pothier has said: ‘If a tavern-keeper has rented a tavern, he is obligated to maintain it as an inn during the whole period of the lease; if not, he is liable for the damages-interests which the lessor suffers because the house has not been kept up as an .inn. These damages and these interests are composed of the amount by which the inn is depreciated. The lessee, by not keeping the place as an inn, gives occasion to those who were accustomed to lodge there to avail themselves of another inn; the inn, being no longer frequented, is, because of that reason, depreciated, and cannot be rented in the future for as large a price.’
 

 “This consideration is a determining factor in the case where the use imposed on the lessee existed previous to the lease; in addition to which, it is the only one which the jurisprudence had in mind. The amount of the rent has not been solely stipulated with a view to revenue of similar immovables, but also regard is had to the special revenues which the object of the premises may procure for the lessee; but he should take care to see that the immovable retains the same revenues after the expiration of the lease. * * *”
 

 
 *86
 
 “But we admit the contrary if the lessee installs in the immovable a commerce or an industry which did not exist there; the lessor cannot then oblige him to keep the clientele or the good-will, since the clientele and the good-will, created by the lessee, belong to him in his proper right. The lessee may, therefore, either abstain from enjoyment of the immovable or he may take elsewhere the commerce or the industry which he was there pursuing.
 

 “This latter solution should be equally admitted if the commerce or industry has been ceded to the lessee separately from the lease, either by the lessor himself or by a third person who was operating it previously. Here, again, the good-will is not attached to the immovable rented, since it is transferred by a means other than the lease.
 

 “In the case where the lessee is held to maintain the customers, he may not create a similar business in a neighboring immovable, even though he continue the use ■of the leased property, if the new venture is of such a nature as to diminish the clientele of the first. However, the opposite has been decided.” Baudry-Lacantinerie et Wahl, op. cit. supra, n° 767, p. 402.
 

 “In saying that the lessee should make use of the thing ‘as the father of the family’, the law means that he should preserve the thing as it should be maintained, and take the same precautions for its conservation as a good administrator would take for his own. For instance, if it be a horse which has been let, the lessee should avoid overdriving it, making it take trips which are too long or haul loads which are too heavy; he should groom it and feed it suitably. If it be a cultivated land, he should keep it up in good condition; if it be a vineyard, give it all the care demanded, etc. * * * It may thus be seen that the lessee could, even while using the thing for the destination for which it was intended, make an abusive use thereof and such a use as would injure the good condition or even the existence of the thing.” Planiol, Traite de droit civil (4e Ed. 1907), t. II, n° 1692, p. 549.
 

 This Court has on numerous occasions recognized the comments of the French authorities ip arriving at a proper interpretation of articles of our Code, especially where there are corresponding articles to the same effect in the Code Napoleon.
 

 We may point out that under the provisions of our Code, the lessee is under an obligation to return the leased thing at the expiration of the lease in the same state in which he received it, except for the necessary allowance for wear and tear. Articles 2719 and 2720 of the Revised Civil Code.
 

 The thing leased was the business and the equipment necessary for its operation. There is no question that the parties contemplated the continuation of the business as a going concern during the term of the lease. A mere reading of the lease itself
 
 *87
 
 and its provisions above referred to discloses this fact.
 

 We agree with the lower court that the lessee violated his obligations under the lease when he diverted the clientele of the leased business to another business owned by him, and is therefore liable to the extent of the damage occasioned.
 

 There have been cases cited by the parties to this suit that are not in point, and it would serve no good purpose to discuss them in this opinion.
 

 We see no merit in the defendant’s contention that the lower court erred in allowing an amendment to the petition after the evidence was adduced. It appears that after the case was submitted in the lower court, a decision was held up at the request of counsel on the representation that the matter was in process of settlement. Thereafter the case was reopened and an amended petition was filed by the plaintiff alleging that the lease had expired under its terms, and alleging the depreciation of the business as evidenced by the receipts taken in by the plaintiff after the business had been returned to him. In effect, the plaintiff abandoned the demand for a cancellation of the lease. The defendant answered the supplemental petition, subject to his objection to the amendment. The defendant does not cite us any authority to support his contention. The lower court has a great deal of discretion in matters of this nature; and unless there was some abuse, which we do not find' we would not be warranted in disturbing the judgment in this respect. The purpose of a trial is to arrive at the true situation as-it then existed. As a matter of fact, even this Court has frequently remanded cases,, when necessary, in order that the true situation may appear.
 

 We see no merit in the defendant’s plea of^estoppel for the reason that the mere acceptance of the weekly rental is not sufficient to support the plea. There is nothing to show that the parties ever understood or intended that the acceptance of the weekly rental was to operate as a discharge of all liabilities that might arise under the lease. Estoppels are not favored in law except in clear cases. Selber Bros. v. Newstadt’s Shoe Stores, 203 La. 316, 14 So.2d 10.
 

 In so far as the award of damages-is concerned, the defendant does not point out in what respect they are excessive, and the plaintiff does not set forth sufficient grounds to warrant an increase in the amount allowed by the lower court. He merely states in his brief that the damages should be increased to a certain amount, without pointing to any items or stating in what respect they are inadequate. Under such circumstances we would not be justified in disturbing the award fixed by the lower court.
 

 For the reasons assigned, the judgment is affirmed at appellant’s cost.