HAWTHORNE, Justice.
 

 This is an action for damages for the alleged breach of a provision contained in a contract of lease. No answer was filed to plaintiff’s suit, but defendant filed exceptions of prematurity and no cause of action. Plaintiff’s suit was dismissed as of nonsuit, and he has appealed.
 

 Mertie M. Bloom and the Southern Amusement Company, Inc., entered into a lease on January 11, 1941, under the terms of which Southern Amusement Company was to rent Bloom’s theatre in Tallulah, Louisiana, for a period of 15 years, beginning February 1, 1941, and ending January, 31, 1956. The instant suit was filed by Bloom on August 23, 1952, while the lease was in full force and effect.
 

 Plaintiff’s petition alleges that defendant has brfeached a provision of the lease which provides that the defendant is 'to “keep the theatre modernized and is to keep up-to-date fixtures therein
 
 at all
 
 times’’,
 
 [1]
 
 and that this breach has occurred in spite of the fact that plaintiff has since 1942 repeatedly asked defendant to comply with this provi
 
 *47
 
 sibn. Plaintiff further alleges that it will cost more than $60,000 in architects’ and contractors’ fees to modernize the theatre building, and he seeks judgment for this amount as damages for breach of the quoted provision. In his petition plaintiff
 
 does not ask for a dissolution of the lease
 
 contract, which still had more than three years to fun according to its terms when the instant suit was filed.
 

 In brief in -this court plaintiff has cited numerous common-law authorities to the -effect that a lessor need not wait until the expiration of the lease term before bringing suit, -but can bring this action whenever the lessee breaches his covenant to keep the leased property in repair. See City Hotel Co. v. Aumont Hotel Co., Tex.Civ.App., 107 S.W.2d 1094; Fagan v. Whitcomb, 4 Willson, Civ.Cas.Ct.App. 27, 14 S.W. 1018; Herboth v. American Radiator Co., 145 Mo.App. 484, 123 S.W. 533. Common-law authorities, however, are of no assistance to the court in a case such as this. A lease for years is regarded in the common law as the grant of an estate, whereas under the civil law a lease is regarded as a transfer of the use and enjoyment of the property. Rials v. Davis, 212 La. 161, 31 So.2d 726. Moreover, even under the common-law authorities relied on by. plaintiff, he could not in a suit of this type recover as damages the amount which it would cost to make necessary repairs to the leased property, for under those authorities the measure of damages in such an action is not the cost of repairs but the injury done to the reversion. See common-law authorities cited above; 36 C.J., Sec. 802, p. 168; [51 C.J.S., Landlord and Tenant, § 373].
 

 We. have found no cases in the Louisiana jurisprudence dealing squarely with the issue presented to us by the instant suit,
 
 [2]
 
 and therefore for a solution to the problem we - have relied on the Louisiana Civil Code and -the writings of French com-, mentators who have discussed- this very question. This court has often -relied on the French authorities in arriving at a proper interpretation of the articles of . our Gode, especially .when the corresponding articles of the Code Napoleon aw practically the same as ours.
 

 Article 1926 of the Louisiana Civil Code provides:
 

 “On the breach of any obligation to -<ko, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the ’ dissolution of the contract, and in all.these cases damages may be given where they have accrued, according to the rules established in the following section.”
 

 Upon the breach of any obligation to do or not to do, therefore, (1) the obligee
 
 *49
 
 is entitled either to damages where they have accrued or, in cases which permit it, to specific performance of the contract and damages where they have accrued, at his option; or (2) he may require the dissolution of the contract and damages where they have accrued.
 

 The sole question presented here under this article is: Have the damages which plaintiff here seeks to recover accrued? In other .words, is his action, which he brought during the existence of the lease, and without seeking its dissolution, to recover the cost of repairs not yet made,' premature? We have decided that it is.'
 

 Article 2710 of the Louisiana Civil Code provides that the lessee is bound to enjoy the ..thing leased as a good administrator, according to the use for which it was intended by the lease. This article of our Code contains the same provisions as Article 1728 of the Code Napoleon. The French commentators argue that, if a lessee breaches his obligation to keep the leased premises in repair, he violates the provision of Article 1728 of the Code Napoleon (our Article 2710) that the lessee must enjoy the thing leased as a good administrator. See Huc, Commentaire théorique & pratique du code civil (1897), t. 10, no 308, p. 417; Colin, Capitant et de La Morandière (10e éd. 1953), t. 2, nos 1022, 1023, p. 677. Cf. Baudry-Lacantinerie et Wahl, Traité théorique et pratique de droit civil, Du contrat du louage (2e éd. 1900), t. 1, no 815, p. 435; Aubry et Rau, Cours de droit civil français (5e éd. 1907), t. 5, no 367, p. 307, On the question of whether the lessor can sue the lessee for damages
 
 during the existence of the lease,
 
 without seeking its dissolution, for breach of the lessee’s obligation to keep the leased premises in repair, however, there is some conflict among the French authorities.
 

 Baudry-Lacantinerie and Wahl say that, if the damage to the leased property is irreparable, the lessor can bring suit for damages at once, without waiting for the end of the lease. Moreover, they cite cases for the proposition that the lessor can bring his action during the existence of the lease even in cases in which the damage caused by the lessee is of the type that could be repaired during the remainder of the lease term. They note, however, that in the latter type of case the lessor’s suit is usually limited to a determination of the amount of damage that has occurred, and the lessor is not permitted to collect any damages from the lessee until the end of the lease, and then only if the damage to the leased premises has not been repaired.
 
 [3]
 
 These commentators criticize the French courts for not forcing the lessee to pay damages immediately, and point out that, if the lessor is forced to wait until the end of the lease, the lessee may be insolvent. They suggest that in cases in which the
 
 *51
 

 damage to
 
 the property is reparable, the court should either cancel the lease with damages, order the lessee to pay money damages immediately, or force the lessee to repair the property. Baudry-Lacantinerie et Wahl, op. cit. supra, nos 775, 776, 777, p. 407.
 

 Aubry and Rau, on the other hand, contend that the lessor should not be allowed to maintain an action solely for money damages before the expiration of the lease, except in cases where the damage to the leased property is of the type which cannot be repaired during the existence of the lease. They support this view by pointing out that, if the lessor could actually collect damages during the lease term for injury to the leased property which might be repaired during the remainder of the lease term, the lessor would be enriched at the expense of the lessee, whereas the lessee would still be under the obligation to maintain the property. Aubry et Rau, op. cit. supra, no 367, pp. 310-311. See also Laurent, Principes de droit civil français (5e éd. 1893), t. 25, no 266, p. 290.
 

 In a more modern commentary by Ripert and Boulanger, however, the authors conclude that, although the obligation on the part of the lessee to make repairs exists during the whole term of the lease, the lessor’s right to damages in the event the lessee fails to make repairs does not accrue until the property is restored to the owner at the expiration of the lease. Ripert et Boulanger, Traité élémentaire de droit civil de Planiol (4e éd. 1952), t. 2, nos 2713-2715, p. 856.
 
 [4]
 

 We agree with the authors of the more modern commentary, and, since plaintiff
 
 does not seek a dissolution of the existing lease,
 
 we are of the opinion that his action is premature, and that the
 
 damages
 
 he here seeks have not actually accrued.
 

 In this connection it might
 
 be
 
 pointed out that the cost of remodelling the building, or the cost necessary for this purpose, has not been incurred by plaintiff, and, if he were permitted to recover this cost during the existence of the lease, there is no assurance that such repairs would ever be made. Moreover, if the defendant were condemned to pay these costs while the lease is still in effect, it as lessee would be entitled to the use, benefit, and enjoyment of these repairs under the lessor’s obligation to maintain the lessee in the possession and enjoyment of the property according to the terms of the lease.
 

 It might be observed that, where the lessee breaches a provision of a lease and the lessor seeks and obtains a dissolution of it for such a breach, in a proper case Article 2711 of the Louisiana Civil Code may be applicable. That article reads:
 

 
 *53
 
 “If the lessee makes another use of the thing than that for which it was intended, and if any loss is thereby sustained by the lessor, the latter may obtain the dissolution of the lease.
 

 “The lessee, in that case, shall be bound to pay the rent, until the thing is again leased out; and the lessee is also liable for all the losses which the owner may have sustained through his misconduct.”
 
 [5]
 

 The first paragraph of Article 2711 of our Code is the same as Article 1729 of the Code Napoleon.
 
 [6]
 
 The French authorities maintain that the breach of any one of the provisions of Article 1728 of the Code Napoleon (our Article 2710) entitles the lessor to a dissolution of the lease under the provisions of Article 1729 of their Code (first paragraph of our Article 2711). They concede that their Article 1729 only mentions “another, use of the thing than that for which it was intended”, but they argue that failure on the part of the lessee to enjoy the thing leased as a good administrator can also be grounds for the dissolution of the lease if, in the opinion of the court, the lessee’s failure to maintain the leased property is damaging the lessor. In support of this reasoning they note the fact that the first of the two articles couples the two obligations, and therefore it is logical to conclude that the penalty set out in the second of the two articles also refers to both obligations. See Baudry-Lacantinerie et Wahl, op. cit. supra, no 772, p. 404. See also Aubry et Rau, op. cit. supra, no 367, p. 310; Ripert et Boulanger, op. cit. supra, no 2719, p. 858; Huc, op. cit. supra, no 311, p. 420; Laurent, op. cit. supra, no 264, p. 287.
 

 It may be that the same conclusion can be reached if the word
 
 use
 
 in Article 2711 of our Code is broadly construed. If a lessee breaches a provision in his lease which obligates him to keep the leased premises in a state of repair at all times during the existence of the lease, and permits the leased premises to ‘ deteriorate and fall into ruin, it is obvious that the lessee is making “another use of the thing than that for which it was intended”. Similarly, a lessee who fails to-keep the leased premises in a state of repair is not enjoying the thing leased in a manner acceptable to a good administrator. Consequently, in a proper case the lessor by maintaining an action for dissolution may be entitled to the damages provided in the second
 
 *55
 
 paragraph of Article 2711. We reiterate, however, that in such a case the lessor must obtain a dissolution of the lease, which plaintiff in the instant case does not seek.
 

 The judgment of the lower court dismissing plaintiff’s suit as of nonsuit is affirmed, plaintiff to pay all costs.
 

 [1]
 

 . In the instant case we are not called upon to determine what the parties intended when they incorporated this provision in the contract or what the provision means.
 

 [2]
 

 . But see Payne v. James and Trager, 42 La.Ann. 230, 7 So. 457.
 

 [3]
 

 . See also Huc, op. cit. supra, no 311, p. 420.
 

 [4]
 

 . It is important to keep in mind that all these French authors were here discussing the lessor’s right to damages during the existence of the lease and without seeking its dissolution.
 

 [5]
 

 . See also Louisiana Civil Code, Article 1926, supra; and Article 2046, which provides that “A resolutory condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagements; in this case the contract is not dissolved of right; the party complaining of a breach of the contract may either sue for its dissolution with damages, or, if the circumstances of the case permit, demand a specific performance.”
 

 [6]
 

 . The second paragraph of Article- 2711 . of the Louisiana Civil Code is similar, to Article 1760 of the Code Napoleon.