221 So.2d 811

STATE of Louisiana, Through the DEPART-
MENT OF HIGHWAYS,

v.

James M. HOLMES et al.

No. 49308.

Jan. 20, 1969.

Rehearing Denied Feb. 24, 1969.

D. Ross Banister, Glenn S. Darsey, Chester E. Martin, Baton Rouge, for applicant.

Love, Rigby, Donovan, Dehan & Love; Cook, Clark, Egan, Yancey & King, Shreveport, for defendant-appellee, respondents.

FOURNET, Chief Justice.

The State of Louisiana, through its Department of Highways, being unable to amicably secure a portion of a certain lot with improvements thereon [1] under lease by the owners, James M. Holmes and Fleeta Adkins Holmes, to Jimmy L. Cordell and Alma Williams Cordell, needed for highway purposes, instituted this proceeding under the authorization contained in Section 19.1 of Article VI of the Constitution of 1921 and R.S. 48:441–460, depositing in the court's registry $35,950.00 as the full fair value of the property as estimated by its expert for "the person or persons entitled thereto" in compensation for the taking, with reservation of the minerals thereunder in accordance with the provisions of R.S. 9:5806, as amended by Act 278 of 1958 in perpetuity in favor of the defendants named, Mr. and Mrs. Holmes and Mr. and Mrs. Cordell. Answering, the defendants, James and Fleeta Holmes as owners, claimed the amount deposited in the registry of the court was not adequate compensation for the property expropriated, which they asserted had a true market value as of the time of the taking of $50,000 and $5,000 as severance damages to the part remaining after the taking, and prayed for judgment accordingly. Defendant, Jimmy Cordell, also answered praying that his lease be recognized as being in full force and seeking judgment against the Department in the sum of $20,000; Alma Cordell also answered in the same manner except that she claimed the $20,000 for herself.[2] The matter is now before us on a writ of certiorari granted on the state's application, 252 La. 472, 211 So.2d 332, to review the judgment of the Court of Appeal for the Second Circuit affirming the judgment of the lower court that increased the award for

1. The property is situated in Bossier Parish and described as a lot measuring 60.73 feet on the easterly right of way line of State Route La. 3 (Benton Highway) between parallel lines, the southerly of which measures 200.33 feet and the northerly of which measures 159.03 feet and the easterly boundary line of which measures 67.94 feet. The part taken was approximately 60 feet wide on Benton Highway and had a depth of 159.03 feet on the south side and 200.33 feet on the north side.

2. The Cordells were married at the time the lease was executed, but divorced at the time this suit was decided.

the property taken and the damage to the remaining property from the estimated value fixed by the department's expert ($35,950) to $37,442.76, and in addition, by a separate judgment, awarded the lessees $12,000. 209 So.2d 780.

According to the record the State of Louisiana, in conjunction with the federal government is presently engaged in the construction of a number of controlled access and divided superhighways running through the state, one being Shreveport-Fillmore Interstate Highway on State Route La. I–20 in Bossier Parish. The project provides for construction along the new alignment and partially along existing streets beginning at the east line of Traffic Street between Courtney Street and Riverside Drive and extending along the proposed alignment of State Route La. I–20 and certain streets to State Route La. US 71 (Barksdale Boulevard) in Bossier City, a distance of 1.127 miles. The property in question is included within the right of way required for the project.

The record further reflects that the property expropriated is encumbered by a lease to Jimmy and Alma Cordell for the operation of a cocktail lounge for a primary term of four years commencing January 1, 1950 and ending December 31, 1962 for the recited consideration of $200 per month with two successive options for a period of three years each.

The state is contending here, as it did in the Court of Appeal, it is not contesting the award given for the property in full ownership but that the trial court erred in making a separate and additional award to the lessees. In other words, the state urges that the award for the property in full ownership includes the value of the rights of the lessees, and, therefore, must be paid from that amount.

The Court of Appeal in resolving the issue, while relying on the pronouncements of this court in the case of In re Morgan R. R. & S. S. Co., 32 La.Ann. 371, and State v. Ferris, 227 La. 13, 78 So.2d 493, and that of the First Circuit Court of Appeal in the case of State Through Department of Highways v. Cockerham, La.App., 182 So.2d 786, we think erroneously applied them to the facts of this case.

The general rule universally obtaining is " * * * where there are several interests or estates in a parcel of real estate taken by eminent domain, a proper method of fixing the value of, or damages to, each interest or estate, is to determine the value of, or damage to, the property as a whole, and then to apportion the same among several owners according to their respective interest or estates rather than to take each interest or estate as a unit and fix the value thereto, or damage thereto separately, although there are holdings otherwise or exceptions. * * *." 27 Am.Jur.2d, Eminent Domain, § 247.

This court, in its landmark decision of In re Morgan, supra, established the rule that has been universally followed by the courts of this state in determining the rights of parties involved in expropriation proceedings where the real estate is encumbered with a lease, as is succinctly expressed in the syllabus:

"If the right of lessee is worth no more than he has agreed to pay in futuro for it, the expropriator of that right would pay him nothing, as it is worth nothing. But if the right of lease will bring a greater sum than it is to cost the lessee, the latter is entitled to be paid the amount of such excess, which amount cannot be charged upon the sum fixed for the rights of the owner, unless the owner has received the rent in advance or *unless the value of his right has been fixed by reference to the present actual value of the lease.*" (Emphasis added.)

The state in establishing the value of the property taken and the damage thereto as a result of the taking introduced the testimony of two well qualified experts from Shreveport in the appraisal of property, Mr. Roy J. Fulco and Mr. O. W. Deen, whose appraisals were separately and independently made. In reaching their conclusions they used two well recognized and approved methods of establishing the value —(1) the appraisement of the land and reproduction cost of improvements less the depreciation; and (2) the income approach, i. e., the economic rental as a basis for capitalization.

By the first method Mr. Fulco fixed the value of all the land at $12,000 and the value of the improvements at $27,102.00 for a total of $39,120.00, and deducting therefrom the value of the land not taken ($3,350) but allowing severance damage thereon ($1,110) concluded the property taken had a value of $35,750.00; Mr. Deen fixed the value of all the land at $11,700 and the value of the improvements at $26,759 for a total of $38,459.00, and deducting therefrom the value of the land not taken ($2,555) but allowing severance damage thereto ($1,800) concluded the property taken had a value of $35,950. Both had calculated the land value on a front foot basis. In the economic approach Mr. Deen and Mr. Fulco both stated, "Based on the rental history of the subject property and study of comparable rental data, the economic rent of the subject property is estimated as per month— $550.00." Using this criterion of value for capitalization purposes, Mr. Fulco fixed the value of the improvements at $25,303.00 as compared to that of Mr. Deen of $26,455.00, and using the same land value as in the cost approach and giving due consideration to severance damage found a total of $35,060, and $37,400, respectively.

In establishing their claim the landowners called Mr. A. C. Montgomery, a qualified appraiser, who testified, "The income

approach and the cost approach figured pretty well the same so I elected to use the actual cost approach to the buildings predicated on its type of construction, the number of square feet and all, which was based on $10.90 or a construction cost of $28,765.10." With the depreciation allowance he found a value of the improvements taken to be $27,228.95 and using the square foot basis he fixed the total land value at $14,925.80, thereby totaling $42,154.75. Deducting for the land not taken but allowing severance damage thereon, he found the value of the property taken to be $39,400.00.

In support of their claim the lessees offered the testimony of Mr. Aaron Beam, a realtor dealing in leasing and selling of cocktail lounges, who testified that a return of one per cent per month on the investment is what can be expected for the rent and that for the property in question he considered $400.00 per month a fair amount.

The trial judge in his written reasons for judgment observed that the value ascribed to the improvements by all three appraisers before depreciation are less than $500.00 apart and after depreciation the difference is only $1,251.00, and he averaged the latter figures thereby fixing the value of the improvements at $25,290.51. In fixing the value of the land involved he accepted Mr. Montgomery's appraisal based on the square foot method rather than using that of the state's experts on the front foot basis, finding a total value for the part taken including the improvements along with severance damages to be $37,442.76. In addition the trial judge awarded the lessees $12,000 for their lease advantage using the lessees' witness' formula in fixing the market or economic rental value at $400 per month.

■ We find no fault with the conclusions made in the lower courts that in expropriation of property encumbered with a lease, the rights of both the owner and the lessee must be reckoned with in acquiring perfect ownership. Where an owner has granted a lease on the property taken, as here, he is powerless to transfer to the expropriator any greater right of ownership than he possesses at the time. Two separate and distinct sets of rights are being acquired in the taking as required by the Louisiana Constitution of 1921 as to the owner under Article 1, Section 2 [3] and that of the lessee under Article 4, Section 15 thereof.[4] Consequently, the

3. "* * * Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."

4. "No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid."

expropriator to acquire perfect ownership must expropriate the rights of the landowner and that of the lessee.

 It is apparent that under the rule laid down in the Morgan case that "where the value of the property has been fixed * * * by reference of the rent stipulated, and not by reference to the actual present value of the lease * * * it would be inequitable to charge the owner with the difference between the stipulated rent and the actual value of the lease," applies only when the appraisal of the property taken was made without consideration of the economic value of the lease when using the income approach. Hence, the case at bar is readily distinguishable. As pointed out above all the appraisers in their evaluation fixed the entire and full value of the property at the time of the taking and the damage thereto using two recognized and approved methods, arriving at approximately the same amount under both approaches. While in one of the recognized methods there was appraisal of the improvements using the reproduction cost less depreciation, in the other method, they also appraised the land and damage to the remainder, but in appraising the improvements they used the economic income approach. It, therefore, follows in fixing the value of the property in full ownership using the actual value of the lease or the cost of reproduction less depreciation, they

being substantially the same, the lessee must be paid from that amount.

It is apt to observe that while the experts for the state in using the economic income approach found the fair market value based on comparable property to be $550 at the time of the taking, the trial judge used the appraisement of the lessees' expert. This matter is not at issue here as the judgment as to that phase of the case is final since no appeal was taken by the lessees from the judgment of the trial judge nor application for writs made to this court.

For the reasons assigned the judgment of the Court of Appeal affirming the judgments of the district court at appellant's cost is set aside and the judgments of the district court are amended and recast to read as follows:

It is ordered, adjudged and decreed that there be judgment fixing the value of the property taken in full ownership and damage thereto at Thirty-seven thousand four hundred forty-two and 76/100 ($37,442.76) dollars, and accordingly that there be judgment in favor of the owners James M. Holmes and Mrs. Fleeta Adkins Holmes, and their lessees, Jimmy L. Cordell and Alma Williams Cordell in the full sum of Thirty-seven thousand four hundred forty-two and 76/100 ($37,442.76) dollars with interest thereon at the rate of 5% per annum from November 26, 1963 until paid less the amount of $35,950.00 deposited in

the registry of the court and for all cost incurred in the trial court.

It is further ordered, adjudged and decreed that the claim of the lessees in reconvention as fixed by the trial court in the sum of Twelve thousand and no/100 ($12,000) dollars with 5% per annum interest thereon from November 26, 1963, until paid, is to be deducted from the above award for the property in full ownership ($37,442.76.)

As thus amended and recast the judgments are affirmed. All costs of the court of appeal and of this court are to be paid by the defendants.

SUMMERS, J., dissents.

HAMLIN, Justice (dissenting).

The State takes the position that the lessee's interest, whatever amount it may be, must be paid from the award for the total and full fair value of the expropriated property.

Under the facts and circumstances of this case, I am constrained to disagree.

Mr. Fulco used the following method:— The appraisement of the land and reproduction cost of improvements, less the depreciation. He concluded that the property taken had a value of $35,750.00.

Mr. Dean used the income approach, i. e., the economic rental as a basis for capitalization. He concluded that the property

taken had a value of $35,950.00—a difference of only $200.00.

The majority opinion agrees with the courts below that the value of the property is $37,442.76, but that the claim of the lessees of $12,000.00 is to be deducted from that award.

Thus, it is clear to me that the owners will not receive the full fair value of the expropriated property; they will lose $12,000.00 thereof.

I am of the opinion that the courts below have rendered fair and equitable judgments between the parties in an unusual factional situation and that the judgment of the Court of Appeal should be affirmed.

I respectfully dissent.

SANDERS, Justice (dissenting).

In Louisiana, a predial lease is a contract by which one party for a price gives to the other the enjoyment of land for a stipulated term. LSA–C.C. Arts. 2669, 2674. Unlike a lease at common law, it creates no estate in the land. Bloom v. Southern Amusement Company, 228 La. 44, 81 So.2d 763; Rials v. Davis, 212 La. 161, 31 So.2d 726; 51C C.J.S. Landlord & Tenant § 202 (4), p. 521. The lessee's rights under the lease are classified as personal rights, as distinguished from real rights. They are often classified as rights *ad rem*, or upon the thing, since they include the right to use and enjoy the land. Columbia Gulf Transmission Company v. Hoyt, 252 La. 921, 215

So.2d 114; Yiannopoulos, Civil Law of Property, § 95, p. 277 (1966).

If the land is expropriated during the term of a lease, the lease terminates. The lessee has no claim for damages against the lessor. LSA–C.C. Art. 2697. The lessee may, however, look to the expropriator for his damages for loss of the lease. See Columbia Gulf Transmission Company v. Hoyt, supra. Normally, the loss is measured by the lease advantage, that is, the difference between the contract rent and a higher economic rent. State Through Department of Highways v. Levy, 242 La. 259, 136 So.2d 35; In Re Morgan R. R. & S. S. Co., 32 La.Ann. 371.

When, as here, the expropriation of land results in a lease termination, the landowner is entitled to recover the following in the expropriation:

A. The present value of the property which would have reverted to the lessor at the end of the lease; and

B. The present value of the anticipated rent for the term of the lease.

The lessee is entitled to recover his damages composed of the lease advantage, discounted to its present value, plus the present value of any improvements constructed by the lessee and to be retained by him under the terms of the lease. Comment, Expropriation—Compensable Items in Louisiana, 24 La.L.Rev. 849, 873–875.

Obviously, there should be no duplicate award of the lease advantage to the landowner and the lessee. The court should award the lease advantage only to the lessee, since the award is for the lessee's damages.

Unlike the majority, I am unable to determine from the record in the present case that the lower courts awarded the lease advantage both to the landowner and lessee, thereby duplicating the award. Apparently, the majority relies only on the terminology used by the appraisers in computing the value of the improvements, that is, "reproduction cost, less depreciation." I believe this is insufficient. Moreover, the result cannot be reached without overruling State v. Ferris, 227 La. 13, 78 So.2d 493 (1955), in which this Court passed upon a similar award. In its Court of Appeal briefs, the State concedes that State v. Ferris supports the Court of Appeal decision.

Since I remain unconvinced that the lower courts made a duplicate award of the lease advantage to the landowner and since the majority has failed to confront State v. Ferris, I adhere to the result reached by the Court of Appeal.

For the reasons assigned, I respectfully dissent.

Rehearing denied.

HAMLIN, SANDERS and SUMMERS, JJ., are of the opinion a rehearing should be granted.