SARTAIN, Judge.
This action involves the expropriation of a temporary servitude to permit a detour route during the period of construction of an interchange at the intersection of Greenwell Springs Road and the Airline Highway in the City of Baton Rouge. Suit was initially filed against the owner (Cefalu) on January 6, 1966. However, it was discovered that on December 14, 1965, Cefalu had leased the subject property to OCE Corporation (OCE) for a term of forty years at a monthly rental of $350. The Department of Highways (Department) amended its original petition to include OCE as the owner of a leasehold right.
Cefalu answered and sought damages in the amount of $350 per month representing the amount paid to him under the lease.
OCE also filed an answer in the form of a general denial and further claimed that the fair market value of their leasehold interest was $600 per month from the date of the taking to the date of the termination of the servitude. As third party plaintiff, OCE also claimed a diminution in rent from Cefalu in the amount of $350 per month during such time as the construction servitude remained in effect.
At the commencement of the trial on the merits, it was stipulated that any evidence offered by OCE would also be considered as having been offered on Cefalu’s behalf. At an early stage in the course of the trial, the question arose as to whether OCE was seeking just compensation for the value of the property temporarily taken or was in fact seeking consequential damages. The trial judge permitted OCE to amend its pleadings to seek relief for dam *275 ages and the Department consented that the hearing proceed, reserving unto itself the right to deny that OCE was entitled to any consequential damages.
The trial judge rejected Cefalu’s claim for damages, OCE’s third party demands against Cefalu, and awarded OCE judgment in the amount of $10,500 representing $300 per month damages for thirty-five months from which judgment the Department appeals, contending that the award to OCE was for consequential damages which under the law OCE is not entitled to receive.
It is quite clear from the oral reasons the judgment given by the trial court that the award in favor of OCE was for damages. We quote in part from these reasons, to-wit:
“In the opinion of the court the landowner, Mr. Cefalu, has not been damaged by the taking of this construction servitude. It could have happened that the lessee, OCE Corporation, might have made demand on Mr. Cefalu for diminution of the rent because of this taking. That is one of the alternative prayers of the corporation’s answer and re-conventional demand. But it is immaterial as to whether the court approaches it from that standpoint or approaches it from the standpoint of a direct claim for damages on the part of the lessee corporation, and that is the approach being used in this opinion.
It does not seem to be disputed that this lessee has suffered some damage because of this taking. The State first deposited $600 as its compensation for the taking, but that was later increased by Mr. Snyder’s appraisal to $780. The court must confess that it is unable to follow the reasoning in the testimony of Mr. Snyder as to the damage caused by the taking. In the opinion of the court it is a simple problem; they are damaged to the extent of the monthly rental being paid to the landowner and what they might reasonably be expected to realize from a sublease of this property less the part involved in the construction servitude.
According to the testimony of Mr. Perkins a fair rental value of the leased property less the construction servitude is $50 a month. The court makes no pretensions as being any sort of a real estate expert, and must necessarily follow the opinion of such experts.
In the court’s opinion the damages sustained by the lessee, OCE Corporation, is at the rate of $300 per month for each month during the existence of the construction servitude.” (Emphasis ours)
For reasons hereinafter set forth we are of the opinion that the trial judge erred as a matter of law and that OCE is not entitled to the amount awarded by the district court and the judgment should be amended.
The temporary work servitude burdens the southwest corner of the leased property. The property leased comprised approximately 56,571 square feet with a frontage on the north side of Greenwell Springs Road of 221 feet, by a depth of 317 feet on its western boundary and 215 feet on its eastern boundary and a width of 227 feet across its northern or rear boundary. The area sought for the servitude is triangular in shape and measures 136.74 square feet on the Greenwell Springs Road by a depth along its western boundary of 104.84 feet. At the time of the taking the tract of land was unimproved.
The necessity for the taking and the highest and best use of the property are not questioned. All parties are of the opinion that the best use for the entire tract obtained by OCE from Cefalu is for a filling station.
To our knowledge this is the first occasion an appellate court has had an opportunity to review a factual situation similar to the one at hand, i. e., the temporary taking of a portion of an unimproved tract of land subject to a lease.
*276 The right to expropriate lands for temporary purposes is well recognized. In Louisville & N.R. Co. v. R.E.E. De Montluzin Co., Inc., 166 La. 211, 116 So. 854 (1928), the court held that the defendant was entitled to receive a fair rental for the temporary occupancy of a parcel of land needed for the handling of building materials required for the construction of a railroad bridge. See also 29A C.J.S. Eminent Domain § 142, page 598. Other cas.es where the owner has been compensated for temporary work servitudes are Michigan Wisconsin Pipe Line Co. v. Dark, 192 So.2d 904 (2d La.App., 1966); United Gas Pipe Line Co. v. New Orleans Term. Co., 156 So.2d 297 (4th La.App., 1963); State of Louisiana Through Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881 (1955) and Florida Gas Transmission Co. v. Munson, 198 So.2d 750 (1st La.App., 1967, writs refused, 1967). However, in none of these cases was the value of the temporary work servitude the principal issue. Neither do the cases contain any expressions with respect to a method or formula employed to determine the value of a temporary servitude.
Where the taking of land burdened with a lease is permanent, the measure of compensation to be paid the lessee is also well settled under our jurisprudence. The matter was first considered by our Supreme Court in 1880 in In re Morgan R. & S.S. Co., 32 La.Ann. 371 and has been consistently followed. See State v. Ferris, 227 La. 13, 78 So.2d 493 (1955) and State, Through Department of Highways v. Levy, 242 La. 259, 136 So.2d 35. The same rule was applied by us in State, Through Department of Highways v. Cockerham, 182 So.2d 786 (La.App. 1965) wherein we discussed at length the rationale of In re Morgan and the underlying reasons therefor. See also Central Louisiana Electric Co. v. Gamburg, 200 So.2d 733 (3d La. App., 1967). The last expression on the subject by the Supreme Court is found in State, Through Department of Highways v. D. & J. Realty Co., 254 La. 1149, 229 So.2d 344 (November, 1969) which referred to the decision in State, Through Department of Highways v. Holmes, 253 La. 1099, 221 So.2d 811 (February, 1969), where the rule was therein stated: (221 So.2d 811, 813)
“This court, in its landmark decision of In re Morgan, supra, established the rule that has been universally followed by the courts of this state in determining the rights of parties involved in expropriation proceedings where the real estate is encumbered with a lease, as is succinctly expressed in the syllabus:
‘If the right of lessee is worth no more than he has agreed to pay in futuro for it, the expropriator of that right would pay him nothing, as it is worth nothing. But if the right of lease will bring a greater sum than it is to cost the lessee, the latter is entitled to be paid the amount of such excess, which amount cannot be charged upon the sum fixed for the rights of the owner, unless the owner has received the rent in advance or unless the value of his right has been fixed by reference to the present actual value of the lease.’ ■ (Emphasis added)”
However, in each of the above cited authorities whether the taking was total or partial it was always permanent. Therein lies the principal distinction between the facts in the cited authorities and those in the case at bar. It appears to us, therefore, that the “lease advantage” rule under the particular facts of this case is not exclusively determinative of the rights of the lessee, OCE.
In our opinion we must determine (1) whether or not OCE, as lessee, is entitled to compensation for the use of that portion of the leased premises which physically comprise the temporary servitude and (2) whether or not OCE is entitled to compensation for damages allegedly caused to the remainder of the premises. In considering these questions, we must also deter *277 mine the applicability of Article 2697 of the Civil Code which reads in part:
“If during the lease, the thing be totally destroyed, * * * or it be taken for a purpose of public utility the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim for damages.”
Because this is a temporary taking we are of the opinion that the lease itself did not terminate as a matter of law. During the existence of the temporary servitude OCE has been deprived of the occupancy of that portion of the property covered by the servitude and is entitled to receive a reasonable rental therefor during the existence of the servitude just as the owner was awarded a fair rental for the temporary use of his property in Louisville & N.R. Co. v. R.E.E. De Montluzin Co., supra. As stated in Columbia Gulf Transmission Co. v. Hoyt, 252 La. 921, 215 So.2d 114 (1968) a predial lease gives to the lessee personal rights ad rem which include the right to use and enjoy the land. The taking of these rights is a com-pensable incident and must be borne by the expropriator. Article 1, Section 2 of the Louisiana Constitution of 1921.
However, in determining damages to the lessee the provisions of C.C. Article 2697 must be given proper consideration. The lessee’s failure to demand a diminution of the price cannot subject the expropriator to any greater degree of liability than it ordinarily would have. By that we mean, the lessee cannot claim his damages as the difference in the lease value before the taking ($550) and its value during the existence of the servitude ($50) for a net value of $500 per month, without considering his obligation to the owner. This circumvents the clear provisions of C.C. Article 2697 and the result allows the owner to retain the full price which is rental income to him and is clearly not compensable under our jurisprudence. Sholars v. Louisiana Highway Commission, 6 So.2d 153 (2d La.App., 1941). When such is done a true “lease advantage” has not been established.
We do not have to rely entirely on our conclusion that OCE has failed to show a “lease advantage” because we are also of the opinion that under the facts of this case the lessee is not entitled to any damages because in essence it is endeavoring to recover for loss of future income. One of its principal officers testified that the corporation is engaged in the business of locating suitable sites for service stations. After entering into a lease with the owner it then subleases to an oil company.
OCE contends that because the southwest corner of their property comprising more than one-half of road frontage, is burdened with a temporary servitude, the property cannot be put at its highest and best use during the existence of the servitude. Its appraiser testified that similarly situated pieces of property attracted rentals averaging $550 per month. This witness also stated that the rental value of OCE’s leasehold interest during the existence of the temporary servitude was the nominal sum of $50 per month as the property could only be used on a temporary basis and then for equipment storage purposes. Such a loss is a consequential injury which has been consistently held to be damna absque injuria. State v. Levy, supra.
Under C.C. Article 2697, OCE clearly had the right to ask for a diminution of the price or a revocation of the lease. It filed a claim in this suit against Cefalu for a diminution of the price. However, for reasons not disclosed in the record, it elected not to pursue either of the options accorded to it under the article. The record reveals that officers of OCE are competent and astute businessmen. They undoubtedly determined that it was in the best interest of the corporation to retain the lease and pay the monthly rental.
*278 Cefalu did not appeal from the judgment of the district court dismissing his claim for damages nor did he seek to recover reasonable rental for the portion of the land physically utilized for the temporary servitude. However, we do not think that the procedural posture of this case as it now stands before us should preclude an award to OCE of the sum representing reasonable rental of the portion used for the servitude.
The Department’s expert by use of comparables determined what he considered to be the fair market value of the entire tract of land leased by OCE. He computed the overall square footage of the leased tract at 56,571 square feet and the area covered by the work servitude at 6,442.9 feet. He then capitalized the land value of the work servitude over a period of three years and determined this sum to be $2,577. He assigned a ten percent return on the value of the area covered by the work servitude at $260 per year. He estimated that construction would require three years during which time OCE should receive a rental of $780.
Because this case involves the temporary taking of a fractional part of unimproved land, we conclude that the appraisal offered by the Department’s expert more properly approaches a sum equal to a fair rental price. The Department in brief and oral argument before us submits that OCE is entitled to this sum and under the particular facts of this case, we concur.
After the record in this matter was lodged with us and briefs were filed, the Department filed “Peremptory Exception of No Right or Cause of Action” and attached thereto a certain instrument relating to the subject property and alleged that the instrument is supportive of the proposition that OCE did not incur any overall pecuniary loss as a result of this expropriation. The facts alleged in the exception pertain to events that occurred after this matter was tried on its merits. The subject matter therefore is completely de-hors the record and the exception(s) is overruled.
Accordingly, for the above and foregoing reasons the award of $10,500 by the trial court to OCE Corporation computed at $300 per month for thirty-five months is amended and as amended is reduced to the sum of $780, computed at $260 per year for three years, less $600 previously deposited, together with five percent interest on the difference between the two sums from January 6, 1966 until paid. In all other respects the judgment of the trial court is affirmed at appellant’s costs.
Amended and affirmed.