AYRES, Judge.
This is an expropriation proceeding wherein the State of Louisiana, through the Department of Highways, expropriated a portion of property owned by the defendants James M. Menefee and Menefee Oil Company, Inc. The property affected by the taking was a service station situated at the northwest corner of U.S. Highway 80 (Cypress Street) and State Highway 143 (North Seventh Street) in the City of West Monroe. The land and the improvements were under lease to Skelly Oil Company. The expropriation was necessitated by the widening and otherwise improving of U.S. Highway 80.
Deposits aggregating $39,721.00, allegedly representing the value of the property taken and the damages sustained to the re *228 mainder, were made by the State into the registry of the court. This sum was withdrawn by James M. Menefee and Menefee Oil Company, Inc.
At the time of the taking, the tract contained an area of 18,800 square feet upon which there was located a service station with three pump islands, two service bays, restrooms, and other facilities common to service station operations. After the taking, the remainder contained an area of 16,004 square feet, with two pump islands and two service bays. The lot fronted 100 feet on U.S. Highway 80 and 150 feet on North Seventh Street.
The proposed public improvements required the construction of a six-inch concrete barrier curb, 75 feet in length, rounding the northwest corner of the intersection and reducing the access to the station from U.S. Highway 80 from 100 feet to 48.56 feet. Medians constructed in the center of U.S. Highway 80 and North Seventh Street further curtailed traffic into and from the station. These medians, constructed of concrete two feet high, began at the intersection of the street and highway and extended north on North Seventh Street a distance of 320 feet and south 98 feet, and west and east on U.S. Highway 80 a distance of 250 feet. Thus, for all practical purposes, eastbound traffic on U. S. Highway 80 and northbound traffic on State Highway 143 were without either entrance to or exit from the filling station, and westbound traffic on U.S. Highway 80 and southbound traffic on State Highway 143 were only slightly less curtailed in entering into and departing from the filling station. In case of the latter, exit was generally effected through a backing movement into the highways, an unusual and dangerous maneuver.
Witnesses for all parties concluded, and the parties themselves conceded, that the filling station site is no longer useful as a service station location. Although the premises may have seme limited commercial use, the aforesaid limitations as to traffic entrance and exit apply whatever the use. The remainder of the property has been vacant since the taking for almost five years.
In its judgment, the trial court awarded the sum of $129,309.00 for the rights condemned by plaintiff in these proceedings, subject to a credit of the deposits in the sum of $39,721.00. The court apportioned this between the owners and the lessee as follows:
To the owners $80,000.00
Less the deposits 39,721.00
$40,279.00
To the lessee for the leasehold interest $49,309.00
From this judgment, plaintiff, State of Louisiana, through the Department of Highways, appealed.
Plaintiff, State of Louisiana, through the Department of Highways, in brief, assigns as error the action of the trial court (1) in making separate awards to the owners-lessors and to the lessee, and then adding the separate amounts to reach the total award; (2) in accepting the testimony as to market value of unqualified witnesses in exclusion of the testimony of two recognized real estate appraisers; (3) in making excessive awards to the owners and lessees ; (4) in awarding $500.00 each to James W. Moore, John Sherrouse, Jr., and E. A. Porter, Jr., as expert-witness fees.
We shall first consider plaintiff’s contention that the trial court made a separate award to Skelly Oil Company for damage to its leasehold interest and added that amount to the award granted the landowners-lessors in arriving at the total amount of the judgment in favor of defendants. If this was done, error was committed.
The law of this State is clear in an expropriation proceeding, where both an owner-lessor and a lessee are adversely affected by the taking, that only one award for all the rights expropriated is made. This award is apportioned between the owner-lessor and the lessee according to *229 the loss each has suffered. State, Department of Highways v. Holmes, 253 La. 1099, 221 So.2d 811 (1969); State Dept. of Highways v. D & J Realty Company, 254 La. 1149, 229 So.2d 344 (1969).
While written reasons for judgment in the instant case do not make clear the method the trial court used in reaching its conclusions as to the amount to be awarded, the judgment rendered explicitly makes a total award . . for the rights condemned by plaintiff in these proceedings, and severance damages to defendants as. a result of said taking The judgment apportions this total award between the defendants. Thus, we find no merit in plaintiff’s first assignment of error as the judgment rendered follows the rule established in Holmes and D & J Realty, supra.
Plaintiff next contends the trial court erred in accepting the testimony of James W. Moore and John Sherrouse, Jr., persons termed by plaintiff as “unqualified witnesses,” as to the market value of the property taken over that of J. Wayne Medley and W. Dean Carter, two recognized real estate appraisers.
Defendants admit neither Moore nor Sherrouse is an expert in the broad, general field of real estate appraisal. However, defendants contend that both men, because of their business experience, are amply qualified to testify as to the value of service station property in the Monroe-West Monroe area.
Moore and Sherrouse have been in the oil and gas distribution business for many years. At the time of trial, Moore operated 59 retail service-station outlets, 22 of which were in Ouachita Parish. Sherrouse operated 60 service-station outlets and was the largest distributor of petroleum products in Ouachita Parish. Both men owned, as well as leased, service station properties. Both were also financially interested in other real estate transactions in the area.
 We adhere to the view expressed on previous occasions that a person need not be a professional real estate appraiser to give expert testimony on the value of land. State, Department of Highways v. Calvert, 209 So.2d 759, 761 (La.App., 2d Cir. 1968) and authorities cited therein. Furthermore, the trial court is vested with much discretion in determining whether a witness is qualified to testify as an expert. State, Department of Highways v. Huson, 166 So.2d 3, 6 (La.App., 2d Cir. 1964; writ refused, 1964).
The crux of this contention by plaintiff is that the trial court erroneously accepted the testimony of Moore and Sher-rouse over that of Medley and Carter. Which set of expert witnesses gave the most credible and realistic testimony is largely a matter of fact for the trial court to determine. Where, as here, the testimony is contradictory, the finding of the trial court should not be overturned unless manifest error appears in the record. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33, 39 (1972).
We conclude the trial court committed no error in accepting the value placed on the property by Moore and Sherrouse, two men who were uniquely knowledgeable of the value of service station property in the Monroe-West Monroe area.
Plaintiff also contends the awards made to defendants were excessive. As often occurs in expropriation cases, the value placed on the property by the witnesses varied greatly.
Testifying for defendants Menefee and Menefee Oil, Moore valued the land at $80,000.00 before the taking and the improvements at $50,000.00. He estimated a residual value of $15,000.00 for the land. Sherrouse valued the land at $75,000.00 and the improvements at $52,000.00. He testified the residual value of the land would be between $10,000.00 and $15,000.-00. E. A. Porter, a qualified appraiser, valued the land at $56,640.00 before the *230 taking and at $15,000.00 after the taking. He did not attempt to value the improvements. Testimony indicated the improvements were useless except in connection with the service station operations.
Medley and Carter, testifying for plaintiff, valued the entire property taken, land and improvements, at less than $80,000.00. Both estimated the just compensation due for the property taken at slightly less than $40,000.00. It is obvious the trial court rejected the appraisals of Medley and Carter as being too low.
Undoubtedly, the appraisals of Moore and Sherrouse were persuasive. They appraised the total value of the property taken at $130,000.00 and $127,000.00, respectively. The total amount awarded by the trial court was $129,309.00.
The fact that the property has been vacant for the five years between the expropriation and the trial indicates its estimated value at from $10,000.00 to $15,000.-00 may have been overoptimistic. However, it would usually and seemingly appear logical to assume that the lot—the land itself—would have some value, but, as already noted, the improvements for the use of the property as a gasoline service station, a purpose for which it is no longer useful, are still upon the lot. In order to use the lot for any other purpose or business, the improvements, consisting of a building, two service bays, two pump islands, pumps, underground storage tanks, and a mass of concrete floors, driveways, et cetera, would necessarily have to be removed and the lot cleared.
The cost of clearing the lot and in removing the improvements, which are useless and without value except in connection with the operation of a service station, a use for which the lot is no longer fitted, is not shown by any testimony in the record. It would be most speculative and pure conjecture on our part to hold that the lot possesses any value over and above the cost of clearing and placing it in condition for any other purpose or business.
The condemning authority carries the burden of proof in establishing special benefits as offsets against severance damages otherwise allowable. Speculative benefits may not receive any more consideration than speculative damages. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33, 41 (1972). Thus, no allowance or credit may be made for the supposed residual value of the lot.
Our courts have long recognized when a lessee has valuable rights which are expropriated he, too, must be compensated for his loss. In re Morgan R.R. and S. S. Co., 32 La.Ann. 371 (1880); State, Department of Highways v. Ferris, 227 La. 13, 78 So.2d 493 (1955); State, Department of Highways v. Holmes, supra; State, Department of Highways v. D & J Realty Co., supra; State, Department of Highways v. Cockerham, 182 So.2d 786 (La.App., 1st Cir. 1965); State, Department of Highways v. Thornton, 220 So.2d 217 (La.App., 3d Cir. 1969; writ refused, 1969).
No better formula for determining the amount to be awarded the lessee has been stated than in Cockerham, supra, 182 So.2d at page 791:
“The amount the expropriator owes the lessee is the monetary difference between the rent he has contracted by the lease to pay to the lessor and the price that the property would lease for at the time of the taking.”
In the instant case, the trial court found, and it is not disputed, the rent paid by Skelly to be $345.83 per month. The testimony regarding the rental value of the property at the time of the taking was contradictory. Moore stated he would have paid $800.00 per month for the location. Sherrouse testified the property could have been rented for $750.00 to $850.00 per month. Medley and Carter placed the rental value at $700.00 and $720.00 per month, respectively.
A review of the judgment rendered, and simple arithmetic computations, *231 disclose the trial court concluded the property had a rental value of $750.00 per month at the time of the taking. Thus, Skelly’s loss as lessee may be determined by a mathematical calculation. For instance, multiplying $750.00 by 122, the number of months remaining in Skelly’s lease, the result is $91,500.00. From this amount there is deductible lessee’s contract rent of $345.83 per month for 122 months, rounded to $42,191.00, which leaves a balance of $49,309.00 representing the lessee’s loss.
We find no error in the amount the trial court found to be the rental value of the property at the time of the taking, or in the amount of the award to Skelly.
Lastly, plaintiff contends the trial court erred in awarding fees of $500.00 each to Moore, Sherrouse, and Porter, who testified as experts for defendant. There is no evidence of the amount of preparation done by either Moore or Sherrouse. The record reflects that these appraisers spent considerable time in gathering information relative to “comparables” and in working up their appraisals. In addition, they were in court two days. Recognizing the wide discretion allowed the trial court in fixing witness fees, we find no error in the amount awarded Moore or Sherrouse.
However, the evidence is clear Porter was not retained by defendant until the end of the first day of trial. He did little independent or preliminary preparation for the trial because of the lack of time available to him. He received all data for comparable sales from counsel for defendants Menefee and Menefee Oil. Under these circumstances, the award of $500.00 to Porter is, in our opinion, excessive in comparison with the fees allowed the other appraisers and should be reduced to the sum of $250.00.
For the reasons assigned, the judgment of the trial court is amended to reduce the expert-witness fee awarded E. A. Porter from $500.00 to $250.00, and, as amended, is affirmed.
Amended and affirmed.